LOUISVILLE & NASHVILLE RAILROAD COMPANY, A CORPORATION, *Plaintiff in Error,* v. MALLORY JOHNSON ALLEN, *Defendant in Error.*

Opinion Filed March 27, 1914.

1. The general and well-established rule is that a release or discharge of one or more joint tortfeasors, executed in satisfaction of the tort, is a discharge of them all, on the ground that the party injured can have but one satisfaction for his injury. Each is considered as sanctioning all the acts of the others, thereby making them his own, and each is liable for the whole damage as if it had been occasioned by himself alone; hence the law considers that he who pays for the injury has paid for all, and there is nothing left for which the other tortfeasors can be liable.

2. A release, executed to one tortfeasor, in satisfaction of the tort, being taken most strongly against the releasor, as a general rule, is conclusive evidence that he has been satisfied for the wrong; and after satisfaction, although it moved from only one of the tortfeasors, no foundation remains for an action against anyone. A sufficient atonement having been made for the trespass, the whole matter is at an end. It is as though the wrong had never been done.

3. Where, although concert is lacking, the separate and independent acts of negligence of several combine to produce directly a single injury, each is responsible for the entire result, even

17—Vol. 67.

though his act or negligence alone might not have caused it. To make tortfeasors liable jointly there must be some sort of community in the wrong-doing, and the injury must be in some way due to their joint work, but it is not necessary that they be acting together or in concert if their concurring negligence occasions injury.

4. The rule under which parties become jointly liable as tortfeasors extends beyond acts or omissions which are designedly co-operative, and beyond any relation between the wrong-doers. If their acts of negligence, however separate or distinct in themselves, are concurrent in producing the injury, their liability is joint as well as several. Each becomes liable because of his neglect of duty, and they are jointly liable for the single injury inflicted because the acts or omissions of both have contributed to it.

5. It is negligence on the part of an electric street railway company, in the construction and establishment of its road, to so place one of its trolley wires over the track of a steam railway company as not to afford sufficient space for the latter's trains to easily and conveniently pass, without risk of danger and injury to its servants and employes. It is negligence on the part of a steam railway company to permit an electric street car company to so construct and maintain over the track of the steam railway company a trolley wire that it will endanger the lives of its servants and employes. In the event of an injury to an employe of the steam-railway company, while in the discharge of his duty, occasioned by his coming in contact with such wire, the electric company and the steam railway company are jointly liable as tortfeasor for such injury.

6. The mere fact that a plaintiff might not be able to sue all the tortfeasors in the same forum or join them in the same action would not of itself change the liability of such tortfeasors or prevent them from being jointly liable.

7. The acceptance of a sum of money from one joint tortfeasor in satisfaction of a claim for damages, and the execution of

a release and discharge under seal of such joint tortfeasor from all damages by reason of the injuries inflicted, reciting that such sum of money was received "in full compromise, payment, discharge, accord and satisfaction" for or on account of such injuries, operates as a release of the other joint tortfeasor, even though it is stipulated therein that the release of such tortfeasor shall not operate so as to discharge the other, and the right to sue the other joint tortfeasor is expressly reserved. Such an instrument will be held to be a release and not a covenant not to sue.

Writ of Error to Court of Record for Escambia County; Kirke Monroe, Judge.

Judgment reversed.

*Blount & Blount & Carter,* for Plaintiff in Error;

*J. P. Stokes* and *R. P. Reese,* for Defendant in Error.

SHACKLEFORD, C. J.—Mallory Johnson Allen brought an action at law against the Louisville & Nashville Railroad Company, a corporation, to recover damages for personal injuries received by him through the alleged negligence of the defendant. The declaration contains two counts, which, omitting the formal parts, are as follows:

"The plaintiff, Mallory Johnson Allen, by his attorneys, sues the defendant, Louisville & Nashville Railroad Company, a corporation organized under the laws of the State of Kentucky, for that, to-wit:

That prior to the institution of this suit, defendant was a common carrier, by railroad engaged in commerce between the State of Florida and the State of Alabama, and between the State of Florida and other States, and, as such common carrier, defendant was possessed of, owned and operated a line of steam railway, running from the

City of Pensacola, in Escambia County, Florida, to the village or town of Flomaton, in Escambia County, Alabama, and to other points in the State of Alabama, and to points in other States; and other lines of tracks in and about the said City of Pensacola, used and operated in connection with its lines mentioned herein; that, a part of defendant's said line of steam railway ran over and along a certain public street in said City of Pensacola, known and called Alcaniz Street, crossing and intersecting another public street in said city, known and called Gregory Street; that, the Pensacola Electric Company, a corporation organized under the laws of the State of Maine, was possessed of, owned and operated a line of electric street railway, running over and along said Gregory Street, crossing and intersecting said Alcaniz Street, and crossing the line of steam railway of defendant herein mentioned; that for the purpose of providing the electric current necessary to propel its cars, said Pensacola Electric Company provided and placed its trolley wire over and above its line of railway, over and along said Gregory Street, and across said Alcaniz Street, crossing defendant's line of steam railway, aforesaid, at right angles; that, said trolley wire was hung so low, and so near the surface of said streets, where said streets intersected, that employees of defendant, upon the tops of cars drawn by defendant's locomotives, over and along said Alcaniz Street, under said trolley wire, could not pass under said trolley wire with safety to themselves; that, prior to the institution of this suit, plaintiff was employed by defendant in the capacity of switchman, and, as defendant's said employee, it was plaintiff's duty to be upon the top of cars, drawn by defendant's locomotives, over and along Alcaniz Street, over and across Gregory Street, under the trolley wire of the Pensacola Electric Company,

as aforesaid; that, as defendant's employe, it was defendant's duty to plaintiff, to furnish plaintiff with a reasonably safe place in which to work and to perform his duty to defendant; that, notwithstanding its duty to plaintiff, defendant carelessly and negligently allowed said Pensacola Electric Company to place and install its said trolley wire so near the surface of said streets, where said streets intersected, that employees of defendant, upon the tops of cars drawn by defendant's locomotives, over and along said Alcaniz street, under said trolley wire, could not pass under said trolley wire with safety to themselves; that, prior to the institution of this suit, plaintiff was employed by defendant in the capacity of switchman, and, as defendant's said employe, it was plaintiff' duty to be upon the top of cars, drawn by defendant's locomotives, over and along Alcaniz street, over and across Gregory street, under the trolley wire of the Pensacola Electric Company, as aforesaid; that, as defendant's employee, it was defendant's duty to plaintiff, to furnish plaintiff with a reasonably safe place in which to work, and to perform his duty to defendant; that, notwithstanding its duty to plaintiff, defendant carelessly and negligently allowed said Pensacola Electric Compny to place and install its said trolley wire so near the surface of said Alcaniz Street, where said street intersected said Gregory Street, as to endanger the life and safety of plaintiff when upon the top of cars drawn by defendant's locomotives, in the discharge of his duty to defendant, and defendant carelessly and negligently allowed said trolley wire to be and to remain so low as to endanger the life and safety of plaintiff when upon the top of cars drawn by defendant's locomotives, in the discharge of his duty to defendant; that, prior to the institution of this suit, to-wit: Sep-

tember 27th, A. D. 1912, after dark, plaintiff, in the discharge of his duty to defendant, as switchman, aforesaid, was employed by defendant in commerce between the State of Florida and the State of Alabama, and between the State of Florida and other States, and, while so engaged, plaintiff was upon a car, drawn by defendant's locomotive, over and along said Alcaniz Street, and, by reason of defendant's negligence in failing to provide plaintiff with a reasonably safe place in which to work and to perform his duty to defendant, plaintiff was forcibly and violently thrown against the trolley wire of the Pensacola Electric Company, placed and installed so near the surface of said Alcaniz Street as to be dangerous to the life and safety of plaintiff, as aforesaid, thereby forcibly and violently throwing plaintiff from the top of said car to the pavement, many feet below, thereby giving to, and inflicting upon plaintiff, divers and sundry wounds, bruises and sprains, and dislocations, and injuring plaintiff's eye, from the effects of which plaintiff was laid up and lost much time from his vocation, and the consequent loss of earnings, and plaintiff suffered, continues to suffer and will hereafter suffer intense pain in body and mind, and plaintiff was compelled to lay out and expend much money and to obligate himself for medical and doctor's bills in and about the treatment of himself, and plaintiff is permanently disabled.

And plaintiff claims Twenty Thousand ($20,000.00) Dollars.

### Count Two.

The plaintiff, Mallory Johnson Allen, by his attorneys, sues the defendant, Louisville & Nashville Railroad Com-

pany, a corporation organized under the laws of the State of Kentucky.

That prior to the institution of this suit, defendant was a common carrier by railroad, engaged in commerce between the State of Florida and the State of Alabama, and between the State of Florida and other States, and, as such common carrier, defendant was possessed of, owned and operated a line of steam railway, running from the City of Pensacola, in Escambia County, Florida, to the village or town of Flomaton, in Escambia County, Alabama, and to other points in the State of Alabama, and to points in other States; and other lines of tracks in and about the City of Pensacola, used and operated in connection with its lines mentioned herein; that, a part of defendant's line of steam railway ran over and along a certain public street in said City of Pensacola, known and called Alcaniz Street, crossing and intersecting another public street in said city, known and called Gregory Street; that the Pensacola Electric Company, a corporation organized under the laws of the State of Maine, was possessed of, owned and operated a line of Electric Street Railway, running over and along said Gregory Street, crossing and intersecting said Alcaniz Street, and crossing the line of steam railway of defendant herein mentioned; that, for the purpose of providing the electric current necessary to propel its cars, said Pensacola Elecric Company provided and placed its trolley wire over and above its line of railway, over and along said Gregory Street, and across said Alcaniz Street, crossing defendant's line of steam railway aforesaid, at right angles; that, said trolley wire has hung so low and so near the surface of said streets, where said streets intersected, that employees of defendant, upon the tops of cars, drawn by defendant's locomotives, over and along Alcaniz Street,

over and across Gregory Street, under the trolley wire of the Pensacola Electric Company, as aforesaid; that, prior to the institution of this suit, to-wit: September 27th, A. D. 1912, after dark, plaintiff, in the discharge of his duty to defendant, as switchman, aforesaid, was employed by defendant in commerce between the State of Florida and the State of Alabama, and between the State of Florida and other States, and, while so engaged, plaintiff was upon a car, drawn by defendant's locomotive, over and along said Alcaniz Street; that, while plaintiff was so engaged in the discharge of his duty to defendant, as switchman, aforesaid, defendant, through its agents and servants, carelessly and negligently propelled the car, upon which plaintiff was, over and along said Alcaniz Street, over and across said Gregory Street, and under the trolley wire of the Pensacola Electric Company, placed and installed as aforesaid, thereby forcibly and violently throwing plaintiff against said trolley wire, thereby forcibly and violently throwing plaintiff from the top of said car to the pavement, many feet below, thereby giving to and inflicting upon plaintiff divers and sundry wounds, bruises and sprains, and dislocations, and injuring plaintiff's eye, from the effects of which plaintiff was laid up and lost much time from his vocation, and the consequent loss of earnings, and plaintiff suffered, continues to suffer, and will hereafter suffer intense pain in body and mind, and the plaintiff was compelled to lay out and expend much money and to obligate himself for much money for doctor's and medical bills, in and about the treatment of himself, and plaintiff is permanently disabled.

: And the plaintiff claims Twenty Thousand ($20,000.00) Dollars."

To this declaration the defendant filed several pleas,

not guilty, assumption of risk by the defendant, contributory negligence of the defendant and that, prior to the institution of this action, the plaintiff had instituted an action against the Pensacola Electric Company, a corporation, for the recovery of damages for the identical injuries for which this action is brought and had settled and compromised such action against the Pensacola Electric Company for the sum of twelve hundred and fifty dollars and had received and accepted such sum and had executed the following receipt and release therefor, which release was a bar to this action:

"Received of Pensacola Electric Company this 26th day of June, 1913, the sum of Twelve Hundred and Fifty ($1,250.00) Dollars, in full compromise, payment, discharge, accord and satisfaction of and from any and all claims and demands which I, Mallory Johnson Allen, have against said Pensacola Electric Company, its employees, officers or agents, for or on account of any and all damages, injury, expense or loss of whatsoever kind which may have been sustained by me ........................................ in person, right or property, by or through said Pensacola Electric Company, its employees or agents, by reason of an accident to me caused by being knocked from the top of a car of the L. & N. R. R. Co., while employed as switchman by said company, by a trolley wire of said Pensacola Electric Company, at the crossing of said company's tracks at the intersection of Alcaniz and Gregory Streets, on or about September 27th, 1912, in the City of Pensacola, Florida; this release shall not release the L. & N. Ry. Co. from liability for said injuries, and said Allen reserves the right to sue said L. & N. Ry. therefor; or for any matter or thing growing out of same, or which may arise therefrom, whether now known or unknown, and the said Pensacola Electric Company, its employees, officers or

agents, are hereby, in consideration of said sum of money, forever released, acquitted and discharged of any and from and all such claims and demands whether now in suit or otherwise.

Witness R. P. Reese,        Mallory Johnson Allen. (Seal)

        E. L. Reese.        ........................................................ (Seal)"

We see no occasion for setting forth the pleas in full. The plaintiff interposed demurrers to the pleas of the defendant which undertook to set up the execution of such release as a bar to the action which demurrers were sustained. A trial was had before a jury upon the pleadings as they then stood, the plaintiff having joined issue upon the other pleas, which resulted in a verdict in favor of the plaintiff for the sum of $2,783.00, with interest and costs, upon which judgment was rendered and entered and which judgment the defendant has brought here for review. Several errors are assigned, but it will not be necessary to consider all of them.

The first point to which we shall direct our attention is as to whether or not the trial court erred in sustaining the demurrer to the pleas and thereby holding that the receipt or release executed by the plaintiff constituted no defense to this action. The defendant does not question the general and well-established rule, which is thus laid down in 24 Amer. & Eng. Ency. of Law (2nd ed.) 306: "A release or discharge of one or more joint tortfeasors, executed in satisfaction of the tort, is a discharge of them all, on the ground that the party injured can have but one satisfaction for his injury. Each is considered as sanctioning all the acts of the others, thereby making them his own, and each is liable for the whole damage as if it had been occasioned by himself alone; hence the law considers that he who pays for the injury has paid for all, and there is nothing left for which the other tortfeasors

can be liable." As is further said on page 307 of the work cited, "Another reason for the rule, as stated by the courts, is that the release being taken most strongly against the releasor is conclusive evidence that he has been satisfied for the wrong; and after satisfaction, although it moved from only one of the tortfeasors, no foundation remains for an action against any one. A sufficient atonement having been made for the trespass, the whole matter is at an end. It is as though the wrong had never been done." We do not discuss the distinction made by the authorities between a release under seal and one executed without a seal for the reason that no such question is presented to us, the release in the instant case being under seal. We select from the many authorities which we have examined the leading case of Eastman v. Grant, 34 Vt. 387, and the well-reasoned case of Circey v. Hans Rees' Sons, 155 N. C. 296, 71 S. E. Rep. 310. Many authorities will be found cited in the notes on pages 306 and 307 of 24 Amer. & Eng. Ency. Law (2nd ed.) in support of the text. See also 34 Cyc. 1086.

It is strenuously contended by the plaintiff that the defendant and the Pensacola Electric Company were not joint tortfeasors, therefore the execution by the plaintiff of the instrument, for the monetary consideration therein recited, releasing the Pensacola Electric Company from further liability, constitutes no bar to the action against the defendant. Reliance is placed upon Chapman v. Pitts burg Railways Company, 140 Fed. Rep. 784, and Pittsburg Railways Company v. Chapman, 145 Fed. Rep. 886, affirming the decision of the lower court, as squarely supporting this contention. We have subjected the opinions rendered in these two cases to a careful and critical examination and analysis and find ourselves unable to follow or to concur in the reasons given for the conclusion reached.

So far as is disclosed by the condensed statements in the
two opinions as to the pleadings and the evidence adduced
in the action, it seems to us that the conclusion announced
that the Pittsburgh Railways Company and the Baltimore
& Ohio Railroad Company were not joint tortfeasors be-
cause, if the latter company was liable at all for negli-
gence, it was by reason of "a negative act of omission"
in failing to notify the plaintiff of the presence of the
overhanging trolley wire, while the Pittsburgh Railways
Company, if liable, was so by reason of "a positive act of
commission" in placing its wires at an unsafe distance
above the railroad tracks, is opposed to principle and
against the weight of authority. We concede that the
cited case presents many points of similarity to the in-
stant case. In that case, as in this, the plaintiff was an
employee of the railroad company and while upon the top
of a freight car of such company in the discharge of his
duty was hurled therefrom to the ground by coming in
contact with the trolley wires of the electric company
which were negligently hung too low over the tracks of the
railroad company to permit safe passage thereunder by
one on the top of a freight car of the railroad company
engaged in the discharge of the duties connected with his
employment. In the cited case the plaintiff was a member
of the Relief Department of the railroad company and as
such member after the injury executed three receipts for
the respective sums of $24.00, $26.00 and $11.00, which are
set out in the opinion in 145 Fed. Rep. 890, whereby he
acknowledged to have received the same in payment of the
benefits due from such Relief Department, under its regu-
lations, and in consideration of which he expressly re-
leased and discharged the Baltimore & Ohio Railroad
Company from all claims or demands for damages by
reason of the injuries which he had sustained. It is stated

in the opinion that the receipts were signed by the plaintiff with great reluctance for fear that such settlement "might jeopard his right to sue, and that it was only after an understanding with the officers of the Baltimore and Ohio Railroad Company that his right of action against the defendant (Pittsburg Railroad Company) would not be affected, that he finally consented to receive the moneys and execute the three releases." The only authority cited to sustain the conclusion reached in the cited case is Thomas v. Central R. R. Co., 194 Pa. St. 511, 514, 45 Atl. Rep. 344, which holds that "a tortfeasor is not released from liability by a settlement between the injured party and one not shown to be liable." Even if we conceded the correctness of this holding, we fail to see how it would help the plaintiff in the instant case. As a matter of fact, the authorities are divided upon the point. See 24 Amer. & Eng. Ency. of Law (2nd ed.) 308, and authorities cited in notes, and Snyder v. Mutual Telephone Co., 135 Iowa 215, 112 N. W. Rep. 776, 14 L. R. A. (N. S.) 321, and authorities collected in case note on page 322. It must be admitted that to frame a definition of joint tortfeasors that could be universtlly applied or which would fit all cases would be a difficult task, if not one impossible of performance, and we shall not attempt it. The following statement in 38 Cyc. 488, would seem to be well supported by the authorities: "Where, although concert is lacking, the separate and independent acts of negligence of several combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it. It has been said that 'to make tortfeasors liable jointly there must be some sort of community in the wrongdoing, and the injury must be in some way due to their joint work, but it is not necessary that they be acting together or in con-

cert if their concurring negligence occasions the injury.' "
See Strauhaul v. Asiatic S. S. Co., 48 Oreg. 100, 85 Pac.
Rep. 230, which quotes with approval the following ex-
cerpt from the opinion rendered by Judge Seaman in
Brown v. Coxe Bros. & Co., 75 Fed. Rep. 689, which would
seem to be a correct statement of the law: "But the rule
under which parties become jointly liable as tortfeasors
extends beyond acts or omissions which are designedly
co-operative, and beyond any relation between the wrong-
doers. If their acts of negligence, however separate and
distinct in themselves, are concurrent in producing the
injury, their liability is joint as well as several. Each
becomes liable because of his neglect of duty, and they
are jointly liable for the single injury inflicted because
the acts or omissions of both have contributed to it."
Erslew v. New Orleans & N. E. R. Co., 49 La. Ann. 86, 21
South. Rep. 153, would seem to be well in point. In that
case it was held as follows: "It is negligence on the part
of an electric street-car company, in the construction
and establishment of its plant, to so place one of its guy
wires over the track of a steam-railway company as not to
afford sufficient space for the latter's trains to easily and
conveniently pass, without risk of danger and injury to
its servants and employes. It is negligence on the part
of the steam-railway company to permit an electric street-
car company to so construct and maintain over its tracks
a guy wire that it will endanger the lives of its servants
and employes." The following authorities also support,
we think, our conclusion that the allegations in the de-
claration in the instant case show that the defendant and
the Pensacola Electric Company were joint tortfeasors;
Walton, Witten & Graham v. Miller's Administratrix, 109
Va. 210, 63 S. E. Rep. 458; D'Almeida v. Boston & Maine
R. R., 209 Mass. 81, 95 N. E. Rep. 398; Pern Heating Co.

v. Lenhart, 48 Ind. App. 319, 95 N. E. Rep. 680; Bagley
v. Wonderland Co., 205 Mass. 238, 91 N. E. Rep. 317; Nel-
son v. Illinois Cent. R. Co., 98 Mass. 295, 53 South. Rep.
619; Cuddy v. Horn, 46 Mich. 596, 10 N. W. Rep. 32; Sir-
cey v. Hans Rees' Sons, 155 N. C. 296, 71 S. E. Rep. 310.
Standard Phosphate Co. v. Lunn, 66 Fla. 220, 63 South.
Rep. 429, cited and relied upon by the plaintiff to support
his contention, does not conflict with what we have said
herein, but, on the contrary, harmonizes with and tends
to support the principles which we have just above stated.
See also Symmes v. Prairie Pebble Phosphate Co., 66 Fla.
27, 63 South. Rep. 1.  We would also call attention to
the fact that the declaration alleges two concurring acts
of negligence on the part of the defendant, first, that it
negligently allowed the Pensacola Electric Company to
place and install its trolley wire so near the surface of
the streets that the employes of the defendant on top of
the defendant's cars in the discharge of their duty could
not pass under such wire with safety, and second, that
the defendant negligently propelled the car upon which
plaintiff was and thereby forcibly and violently threw him
against such trolley wire.  The plaintiff further contends
that the defendant and the Pensacola Electric Company
were not, and could not be held to be, joint tortfeasors
because they could not be joined in the same action for
the reason that the liability of the Pensacola Electric
Company was founded upon the common law, as held by
this court in Lofton v. Jacksonville Electric Co., 61 Fla.
293, 54 South. Rep. 959, while the liability of the defend-
ant is founded upon the Act of Congress known as the
Federal Employers' Liability Act.  We have carefully ex-
amined the argument of the plaintiff upon this point
and are of the opinion that his contention is without
merit.  The mere fact that a plaintiff might not be able

to sue all the tortfeasors in the same forum or join them in the same action would not of itself change the liability of such tortfeasors or prevent them from being jointly liable. The plaintiff has confused the question of right of action or liability with the question of remedy.

It will be observed that the receipt or release executed by the plaintiff to the Pensacola Electric Company, which we have copied above and which the defendant unsuccessfully sought to plead as a bar to the action, contains the following reservation: "this release shall not release the L. & N. Railway Co. from liability for said injuries, and said Allen reserves the right to sue said L. & N. Railway therefor." We must now consider the effect of this reservation. Upon this point the courts are hopelessly divided and in irreconcilable conflict. We have devoted much time to its consideration and have examined all the authorities which we could find bearing upon the subject. We shall not cite them all, but shall select a few of the leading cases upon each side of the question, from which and the notes appended thereto the other authorities may readily be found, if desired. We have reached the conclusion not only that the numerical weight of authority but that the better reasoned cases are to the effect, as was held in Abb. v. Northern Pacific Ry. Co., 28 Wash. 428, 68 Pac. Rep. 954, 58 L. R. A. 293, 92 Amer. St. Rep. 864, "The acceptance of a sum of money from one joint tortfeasor in satisfaction of a claim for damages, and the execution of a release and discharge of such joint tortfeasor from all damages by reason of the injuries inflicted, operates as a release of the other joint tortfeasor, though the parties to the agreement may stipulate that the release of one shall not discharge the other." We are impressed with the reasoning in this case. See the authorities cited therein.

The authorities upon both sides of the question up to that time are collected in the monographic notes in 58 L. R. A. 293 and 92 Amer. St. Rep. 872. In line with the holding in the cited case, see McBride v. Scott, 132 Mich. 176, 93 N. W. Rep. 243, 102 Amer. St. Rep. 416, 61 L. R. A. 445, 1 Ann. Cas. 61; Farmers' Savings Bank v. Aldrich, 153 Iowa 144, 133 N.W. Rep. 383; Flynn v. Munson, 19 Cal. App. 400, 126 Pac. Rep. 181; Ducey v. Patterson, 37 Colo. 216, 86 Pac. Rep. 109, 11 Ann. Cas. 393, 9 L. R. A. (N. S.) 1066. Perhaps, the leading case on the other side of the question, and certainly as well reasoned as any reaching that conclusion which we have found, is Gilbert v. Finch, 173 N. Y. 455, 66 N. E. Rep. 133, 93 Amer. St. Rep. 623, 61 L. R. A. 807, wherein it was held that "If a release of one or more joint tortfeasors contains no reservation, it operates to discharge all; but if the instrument expressly reserves the right to pursue the others, it is not technically a release, but a covenant not to sue, and they are not discharged." To the like effect are Edens v. Fletcher, 79 Kan. 139, 98 Pac. Rep. 784, 19 L. R. A. (N. S.) 618; Walsh v. New York Cent. & Hud. R. R. Co., 204 N. Y. 58, 97 N. E. Rep. 408, 37 L. R. A. (N. S.) 1137. We cannot follow this line of cases. We would call special attention to the excellent opinion rendered by Mr. Justice DeCourcy in Matheson v. O'Kane, 211 Mass. 91, 97 N. E. Rep. 638, 39 L. R. A. (N. S.) 475, Ann. Cas. 1913 B, 267, wherein he clearly differentiates a release and a covenant not to sue, which would seem to have been lost sight of in some of the cases. See also City of Chicago v. Babcock, 143 Ill. 358, 32 N. E. Rep. 271. We are of the opinion that the instrument in the instant case must be held to be a release and not a covenant not to sue. This being true, it follows that the trial court erred in sustaining the demurrers to the pleas which set up such instrument as a bar to the

action. For this reason the judgment must be reversed, and it is so ordered.

TAYLOR, COCKRELL, HOCKER AND WHITFIELD, J. J., concur.

## WHITFIELD, J., *Concurring.*

It required both the placing of the wire by the electric company and the running of the train thereunder by the railroad company to cause the injury as alleged, each acting with full notice or qnowledge of the other's conduct; therefore if liability exists as to both, it is joint and several. Each party is liable if at all for the entire injury. The release given by the injured person to the electric company is under seal and it is expressly executed for a consideration of $1,250.00 "in full compromise, payment, discharge, accord and satisfaction of and from any and all claims and damages  *  *  for or on account of any and all damages, injury, expense or loss of whatsoever kind  *  *  by reason of" an injury alleged to be "divers and sundry wounds, bruises and sprains, and dislocations, and injury to plaintiff's eye." The release under seal further states that the electric company and its employees "in consideration of said sum of money, are forever released, acquitted and discharged of and from any and all such claims and demands whether now. in suit or otherwise." The settlement with and release of the electric company was apparently made upon considerations relating to the existence of a common liability and to the extent of the injury. There is no suggestion of unfair dealing, or that the stated consideration for the release under seal was not in fact paid. The essential purpose of the instrument as clearly expressed was *a release* upon "full

satisfaction" as to one of the joint tortfeasors. It cannot be regarded as a mere covenant not to sue. The electric company was liable if at all for all the damages sustained. The intrument does not purport to evidence a partial sat isfaction, but a "full satisfaction" for the injury sustained "by or through said Pensacola Electric Company, its employees, officers or agents," when the electric company was liable if at all for all the injury caused by the joint tort. The reservation contained in the instrument is re: pugnant to the "full satisfaction" acknowledged under seal for the very substantial consideration paid. The damages, if any, recoverable in an action at law for the injury, are not liquidated or capable of ascertainment by any prescribed or definite rule or method of computation—the amount, if any, depends upon the discretionary estimates and opinions of a jury to be approved by the courts as may be provided by law. It cannot be determined with any degree of certainty in advance of a legal adjudication what amount of damages, if any, is recoverable. If both are liable, it does not appear that there can be in fact an apportionment of responsibility for the injury or any reliable and just basis, or that any just apportionment has been made or attempted with or without the assent or participation or knowledge of the party not released. It does not appear *from the pleadings* that the railroad company has by waiver or estoppel lost its legal defenses growing out of the release or otherwise, or that because of contributory negligence or other matter the $1250.00 for which the release under seal was given "in full  *  satisfaction," may not be regarded as a fair and just compensation for the injury alleged, to-wit, "divers and sundry wounds, bruises and sprains, and dislocations and injury to plaintiff's eye." Under these circumstances the common law rule in force in this State and not affect-

ed by statute, that an effective release under seal, of one joint tortfeasor, executed for a substantial consideration in *full satisfaction* for the injury sustained, releases all who are jointly liable, can not fairly be regarded as waived or rendered inapplicable here, by the repugnant reservation against the railroad company contained in the release under seal given for the stated consideration to the electric company, in which release containing the attempted reservation the railroad company apparently had no part. The law requires only one full satisfaction for a single injury. Where full satisfaction has been received from one joint tort feasor it inures to release all who are liable for the joint tort.

If an action had been brought against the electric company alone for the injury, and a judgment for $1250.00 obtained and satisfied in such action, it would have barred another action against either or both of the joint tort feasors. A technical release under seal executed by the injured person to the electric company for a consideration of $1250.00 agreed on and paid in "full satisfaction" for the injury on the part of the electric company has in law the same effect in barring an action as a judgment against the electric company would have. The reservation against the railroad company contained in the instrument is repugnant to the acknowledgment of "full satisfaction" from the electric company, and the release executed to the electric company under seal for the agreed consideration in "full satisfaction" operates in law to release the other joint tort feasor from further liability; and such release is a bar to an action against the railroad company for the same injury.

Though the remedy against the railroad company be afforded by the Federal law, and the remedy against the electric company be afforded by the State law, each one of

the joint tort feasors is liable if at all for the entire injury; and as the law requires only one *full* satisfaction for the injury, the release under seal executed upon full *satisfaction* received from the electric company operates in law to relieve the railroad company.