340 So.2d 1210 (1976)
Joseph P. PENZA, Appellant,
v.
Theodore NECKLES, Individually and Daniel Resnick, Individually D/B/a Crown Associates, Appellees.
No. 75-689.
District Court of Appeal of Florida, Fourth District.
December 17, 1976.
Steve E. Moody, Moody & Jones, Fort Lauderdale, for appellant.
Michael J. Padula, Allsworth, Doumar, Schuler, Padula & Laystrom, Fort Lauderdale, for appellee-Theodore Neckles.
DOWNEY, Judge.
Joseph Penza sued Daniel Resnick (individually, and d/b/a Crown Associates) and Theodore Neckles in what was primarily a contract action (Circuit Court Case No. 73-5643). After a non-jury trial, the court on *1211 December 31, 1974, entered final judgment for appellant and against Resnick and Neckles, jointly and severally, for $29,392.42. Neckles filed an appeal from that final judgment (District Court of Appeal Case No. 75-162). Shortly after filing his notice of appeal in 75-162, Neckles asked this court to relinquish jurisdiction of the cause to the circuit court so that he might file a motion (pursuant to Fla.R.Civ.P. 1.540(b)) to vacate the final judgment. This court granted the request and the circuit court, after an evidentiary hearing, ruled that a post final judgment document that Penza had executed operated to discharge Neckles from any liability to Penza on the final judgment. This appeal by Penza is from that order, this court having stayed Case No. 75-162 until the outcome of the present appeal.
The post final judgment document between Penza and Resnick is set forth on a standard general release form which in pertinent part states:
"That I, JOSEPH P. PENZA
first party, for and in consideration of the sum of Twenty-Five Hundred and no/100 Dollars, or other valuable considerations, received from or on behalf
of
DANIEL RESNICK, individually and d/b/a CROWN ASSOCIATES, a partnership, and also partners of CROWN ASSOCIATES, other than THEODORE NECKLES.
second party, the receipt whereof is hereby acknowledged,
HEREBY remise, release, acquit, satisfy, and forever discharge the said second party, of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which said first party ever had, now has, or which any personal representative, successor, heir or assign of said first party, hereafter can, shall or may have, against said second party, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of these presents. This release releases Daniel Resnick and all partners of the partnership Crown Associates with the exclusion of THEODORE NECKLES. Any interest whatsoever which the said THEODORE NECKLES may have in Crown Associates or in any monies or other properties coming into Crown Associates at any time is not released in any manner whatsoever. Any monies or personal properties or real properties owned by Crown Associates in which THEODORE NECKLES has any interest whatsoever, is specifically not released by this general release form. Any interest held by any of the partners of Crown Associates in Crown Associates or in any other assets whatsoever, which THEODORE NECKLES may have an interest in, is not released in any manner by this general release form."
The appellate question presented is whether the circuit court's conclusion that the foregoing instrument "satisfied, released and/or discharged" Neckles from the final judgment of December 31, 1974, was proper.
At common law the release of one joint and several obligor released all joint and several obligors on the same obligation. 66 Am.Jur., Release, §§ 35, 36; 4 Corbin on Contracts, § 931; Anno: Joint Debtor's Release, 53 A.L.R. 1420. And the rule was the same as to the release of joint tort-feasors. Louisville & N.R. Co. v. Allen, 67 Fla. 257, 65 So. 8 (1914). Of course, the common law rule on joint tort-feasors was changed to a large degree by the Florida Legislature in 1957 (Chapter 57-395, Laws of Florida), but the common law rule still prevails to this day in matters other than tort.
Since the rule was the same in both tort and contract cases, we can look to several Florida cases which predate Chapter 57-395, Laws of Florida, for guidance in resolving the appellate issue in this case. Clearly, if the instrument involved here had not attempted to reserve to Penza all of his *1212 rights against Neckles, the answer would be simple. However, the instrument involved makes it quite clear that for $2500 paid by Resnick, Penza had no intention of releasing Neckles from the $29,392.42 judgment.
In Louisville & N.R. Co. v. Allen, supra, the Supreme Court of Florida recognized that a release of one of several joint tort-feasors releases all joint tort-feasors. The court then addressed the question of the effect of an express reservation of rights in the release to sue the other joint tort-feasors stating:
"We must now consider the effect of this reservation. Upon this point the courts are hopelessly divided and in irreconcilable conflict. We have devoted much time to its consideration and have examined all the authorities which we could find bearing upon the subject. We shall not cite them all, but shall select a few of the leading cases upon each side of the question, from which and the notes appended thereto the other authorities may readily be found, if desired. We have reached the conclusion not only that the numerical weight of authority, but that the better-reasoned cases, are to the effect, as was held in Abb v. Northern Pacific Ry. Co., 28 Wash. 428, 68 P. 954, 58 L.R.A. 293, 92 Am.St.Rep. 864: `The acceptance of a sum of money from one joint tort-feasor in satisfaction of a claim for damages, and the execution of a release and discharge of such joint tort-feasor from all damages by reason of the injuries inflicted, operates as a release of the other joint tort-feasor, though the parties to the agreement may stipulate that the release of one shall not discharge the other.' We are impressed with the reasoning in this case. See the authorities cited therein. The authorities upon both sides of the question up to that time are collected in the monographic notes in 58 L.R.A. 293 and 92 Am.St.Rep. 872. In line with the holding in the cited case, see, McBride v. Scott, 132 Mich. 176, 93 N.W. 243, 61 L.R.A. 445, 102 Am.St.Rep. 416, 1 Ann. Cas. 61; Farmers' Savings Bank v. Aldrich, 153 Iowa 144, 133 N.W. 383; Flynn v. Manson, 19 Cal. App. 400, 126 P. 181; Ducey v. Patterson, 37 Colo. 216, 86 P. 109, 9 L.R.A.(N.S.) 1066, 119 Am.St.Rep. 284, 11 Ann.Cas. 393. Perhaps the leading case on the other side of the question, and certainly as well reasoned as any reaching that conclusion which we have found, is Gilbert v. Finch, 173 N.Y. 455, 66 N.E. 133, 61 L.R.A. 807, 93 Am.St.Rep. 623, wherein it was held that: `If a release of one or more joint tort-feasors contains no reservation, it operates to discharge all; but, if the instrument expressly reserves the right to pursue the others, it is not technically a release, but a covenant not to sue, and they are not discharged.' To the like effect are Edens v. Fletcher, 79 Kan. 139, 98 P. 784, 19 L.R.A.(N.S.) 618; Walsh v. New York Cent. & Hud. R.R. Co., 204 N.Y. 58, 97 N.E. 408, 37 L.R.A.(N.S.) 1137. We cannot follow this line of cases."
The Allen case was followed in Roper v. Florida Public Utilities Co., 131 Fla. 709, 179 So. 904 (1938), which held:
"The fact that the release contains a provision to like effect as the second paragraph in the agreement here quoted [a reservation of rights to sue other joint tort-feasors] does not relieve it from the rule here approved. We had the identical question in Louisville & N.R. Co. v. Allen, supra, and while we found that there was much contrariety of opinion on the question, we held that a stipulation between the parties that the release of one will discharge the other was the law of this state."
Appellant relies heavily upon the case of Atlantic Coast Line Railroad Company v. Boone, 85 So.2d 834 (Fla. 1956), and Albert's Shoes v. Crabtree Construction Company, 89 So.2d 491 (Fla. 1956), as demonstrating that Florida has drifted away from the old common law rule and is now in accord with the so-called modern view.[1] While we *1213 would prefer that result, the two cases cited are distinguishable and will not support that conclusion.
Both Boone and Albert's Shoes involved covenants not to sue. In Boone the plaintiffs' covenant not to sue one joint tort-feasor was stated in such broad terms that it amounted to a covenant to not sue anyone for the wrong done. The plaintiffs were thus held to be precluded from maintaining their suit against the other joint tort-feasor involved in the action. In Albert's Shoes the injured party had covenanted not to sue one joint wrongdoer but in so doing it specifically reserved its right to sue the other joint wrongdoer. That narrowly drawn covenant not to sue permitted the plaintiff to maintain its action against the second joint wrongdoer.
As pointed out in Boone and Albert's Shoes, there is a recognized distinction between a covenant not to sue and a release. The former recognizes that the obligation or liability continues, but the injured party covenants not to assert any rights thereon against the covenantee. The latter is an outright cancellation or discharge of the entire obligation. In the case at bar we are dealing with a general release executed by Penza, the obligee, releasing Resnick, one joint and several obligor. It is quite evident that Penza did not intend to release or discharge Neckles, the other joint and several obligor, from liability under the judgment. However, the release Penza gave Resnick discharged Neckles from liability, because under the law in Florida as we understand it, the common law rule still prevails and a release of one joint and several obligor releases all others.
Because we feel that this result does not square with justice, we have considered the propriety of treating the release in question as a covenant not to sue, since then it would more nearly have evidenced the intention of the parties (Penza and Resnick). However, such a course of action was condemned in the Allen case. Perhaps the only way to preclude this type of inequitable result is through legislative action similar to that which brought about the elimination of the rule among joint tort-feasors in Chapter 57-395, Laws of Florida.
Since we perceive the question involved to be one of great public interest, we certify the following question to the Supreme Court of Florida:
Does the written release of one joint and several obligor release all other joint and several obligors on the same obligation when the release expressly states that is not the intention of the obligee to release any other joint and several obligor and when the release expressly reserves the right in the obligee to sue any and all other joint and several obligors?
AFFIRMED.
CROSS, J., and SCHULZ, GEORGE E., Associate Judge, concur.
NOTES
[1] "The trend of modern authority tends to modify the strict common-law rule by which joint debtors were often released by an inadvertent or ill-advised release of one of them. The modern view is that the intent of the parties, as expressed by their acts and particularly their writings, should be considered in determining the question of release. Thus, it is held that a release which reserves the creditor's rights against the other judgment debtors does not release and discharge all." 47 Am.Jur.2d Judgments, § 989, p. 85. (Footnotes omitted). See too, 4 Corbin on Contracts, §§ 931, 933; Anno  Joint Debtors  Release, 53 A.L.R. 1420, 1471.