506 So.2d 1047 (1987)
R. Shaw BRIDGES, Appellant,
v.
Beryl C. BRIDGES, Appellee.
No. 85-1752.
District Court of Appeal of Florida, Fourth District.
February 25, 1987.
Rehearing and Rehearing Denied June 1, 1987.
*1048 Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach and Wackeen & Cornett, P.A., Stuart, for appellant.
Thomas E. Warner of Warner, Fox & Seeley, Stuart, for appellee.
Rehearing and Rehearing En Banc Denied June 1, 1987.
GLICKSTEIN, Judge.
Respondent/husband appeals a final judgment in a dissolution of marriage case. We affirm in part, reverse in part and remand.
Beryl C. Bridges filed a petition for dissolution of marriage on July 13, 1984. The parties, who had been married twenty-two years, had three children, only one of whom was at the time still under age eighteen. He was an adult by the time of the trial proceedings. Hence the child support and custody requests were moot. The wife otherwise sought exclusive possession of the marital home, alimony, attorney's fees and equitable distribution of marital property.
The husband answered the petition and filed a counterpetition. He denied that the wife was in need of support, attorney's fees, or the exclusive possession of the marital residence, in which he claimed to have a special equity because of the use of funds from outside the marriage. The husband sought partition and sale of the marital home.
Mrs. Bridges answered the husband's counterpetition. Primarily she opposed the requested partition of the marital home and denied that the husband had a special equity in that home.
On February 22, 1985, the trial court entered a temporary relief order awarding the wife exclusive possession of the marital home and $2,000 per month support while the action was pending.
The case went to trial May 8, 1985. On June 19, 1985, the court entered its final judgment dissolving the marriage. The court awarded the wife, as lump sum alimony, the husband's interest in the marital home, located at Hobe Sound, together with its contents except for certain specified personal property of the husband. The court ruled the wife had no obligation on the promissory note (of $212,000) the pair had given the husband's father when purchasing the marital home, which note had since been bequeathed to the husband.
The wife was to receive the contents of a New Jersey apartment and the husband the contents of a New York apartment. The parties were to retain their respective IRA's and bank accounts. The husband was to be responsible for a $40,000 debt to First National Bank of Palm Beach.
The husband was to retain full ownership of various named investments including his retirement funds with his employer, and his interests in the estates of his late parents.
The wife would not be reimbursed for real property taxes she had paid on the marital home for 1984.
The wife was awarded $7,500 as attorney's fees, and rehabilitative alimony of $2,000 per month for 24 months beginning June 1, 1985, unless she remarry or either wife or husband dies before that time expires.
The husband was to pay up $4,000 in unpaid temporary support. He was denied any special equity in the marital home and his motion for partition. The court reserved jurisdiction to award the wife costs on separate motion and hearing.
The husband unsuccessfully sought rehearing and timely filed notice of appeal.
The parties were married in Paramus, New Jersey, on September 1, 1962, and lived together as man and wife for about 22 years.
At the time of the marriage both were 22 years of age. The wife was beginning her senior year at Wheaton College and the *1049 husband was beginning his studies for an M.B.A. at Harvard Business School. Since 1972, the husband has been a securities analyst specializing in chemical companies. He is a financial analyst and vice president with a Wall Street firm.
During the completion of their schooling the couple lived on proceeds from a trust fund set up by the husband's parents. The trust fund contained $200,000, and supplemented the parties' income throughout the marriage. Ultimately the fund was entirely depleted.
During most of the marriage the wife served primarily as homemaker and mother. In 1977 she began a career of her own. She is now president of a paper importing company in the New York area.
The parties owned a series of homes beginning in 1964. The proceeds of sale of one home were  up to but not including the last purchase  used toward purchase of the next one. The last previous home was sold in 1981 for $337,000. This was not used to purchase the Hobe Sound home. The wife said she had done wallpapering and painting in two of the homes. She admitted the husband also did considerable work on renovation of the same two homes.
In spite of very substantial income, the couple always lived beyond their earnings, supplementing them with gifts from the husband's parents and money from the trust fund.
The husband's parents during their lifetime gave the husband (and his brother) annual gifts, usually by distribution of an asset such as stock or another investment. The husband's parents also made other gifts, such as paying for airplane fares and expenses of the couple so they could visit the husband's parents. According to the husband, the trust fund plus other gifts during the marriage totalled in value between $300,000 and $400,000.
In August 1981, the parties sold their then jointly owned marital home in Greenwich, Connecticut and moved to the Hobe Sound residence of the husband's ailing father so they could take care of him. The net proceeds of the sale of the Greenwich home were about $221,000. The money was put in a money market account in the name of the husband. A car and boat, purchased with money from this account, cost about $71,000. These assets were later sold for a total of about $48,500, which was returned to the same account. Without the wife's participation in the decision, the husband invested much of the money from the account in a business that failed.
The parties jointly bought the husband's father's home for $297,000. They paid him $35,000 in cash and gave him an unsecured note for the rest. At the time of the father's death in April 1983 the amount due on the note was $212,000. Under a codicil to the father's will, the note was devised to the husband on the father's death. The wife testified it was the father's intent to forgive both parties the amount of the note on his death. The husband never asked the wife for her share of the note until after she filed for divorce.
During the marriage the wife was in charge of household finances. The husband would turn over his paycheck to her, and she paid the bills. Large bills for capital purchases or the like were paid from the husband's bonuses or the trust fund. The wife ran the household, and helped the career by entertaining clients and business associates and frequently by typing reports for the husband on evenings or weekends.
In 1981 the wife took a leave of absence from her job to come to Hobe Sound and care for her mother-in-law during her final illness. The subsequent move to care for the husband's father involved resignation of the wife from her then position with a paper company, and the husband's taking a 50% cut in pay so he could work out of Florida. Later the wife went back to work part time for her former employer, and the husband went back to New York full time. The wife subsequently became president of another paper company.
Neither husband nor wife actually lives in the Hobe Sound home. The wife and the children feel a strong attachment to the home because of the time the family lived *1050 there, and because they used to visit the husband's parents there. The wife rented the house out for two months in 1985 because she had trouble maintaining it when the husband skipped some temporary support payments and she had a $5,000 tax bill to pay. She borrowed that amount from her employer. The wife testified that she had not rented out the house before or since the two months mentioned.
The wife testified, based on the parties' 1983 and 1984 tax returns, that in 1983 the husband's income was $149,473 and hers was $61,000. The next year the wife's income was $63,000. The husband's income reported in 1984 was $128,000. The wife's salary was raised to $65,000 in 1985. She also receives bonuses from company profits, if any. She formerly received money from the company, towards her living expenses but this ceased with the 1985 salary increase. She continues to have the use of a company car. She estimated a total 1985 income, including her bonus, at $80,000.
The children, all legally adults, are at college. They are largely supported by trust funds created by the grandparents, though the mother/wife claims she contributes to their support.
The husband has some income from a custodial account left to him by his mother in the amount of $115,845. He also felt the $212,000 note was wholly his. His listed assets owned jointly with the wife amount to $240,971. Included were stock, cash, IRA's, the value of the children's cars, and his funds in the employer's retirement and profit sharing programs. This does not include the Hobe Sound house, which he valued at $425,000, and the wife thought was worth $400,000. The husband owed $50,000 on notes. The wife listed as assets $16,000 in IRA's and cash.
The issues are as follows:
I. Whether the trial court erred in denying the husband's claim of a special equity in what had been the most recent marital home, because the husband had been bequeathed the note, whose principal was $212,000, which the parties jointly had given to the husband's father as part of the purchase price. We conclude it did not.
II. Whether the trial court erred in awarding the wife the husband's interest in the Florida home that had been the most recent marital home. We conclude it did because as a result the property distribution is inequitable.
III. Whether the trial court erred in awarding the wife two years' rehabilitative alimony. While in itself, we believe it did not, in light of the inequitable property distribution, we believe it did.
IV. Whether the trial court erred in requiring the husband to pay the wife's attorney's fees. Again, while in itself we do not, in light of the inequitable property distribution, we believe it did.

I
The wife relies primarily on Penza v. Neckles, 340 So.2d 1210 (Fla. 4th DCA 1976), as authority for the correctness of the trial court's determination the husband was not entitled to a special equity in the Hobe Sound home by virtue of his father's devise of the parties' jointly signed note to the husband. There it is stated that at common law release of one joint and several obligor released all joint and several obligors on the same obligation. Id. at 1211. There is, however a modern rule that looks to the intent of the parties as expressed by their acts and especially their writings, to determine the question of release. Id. at 1212 n. 1.
Here the intent of the husband's father can be discerned from the fact the devise under the codicil would have been to the wife if the husband predeceased his father. It is clear from the record that there was great affection between the wife and her in-laws. The trial court held that the note has been discharged; and we believe the evidence supports such conclusion.
As to the husband's share of the house as a joint owner, apart from the note, the wife argued, and the trial court may have reasoned, that a portion of the husband's share was owed to the wife because the husband had used the wife's half of the *1051 proceeds of the sale of the prior marital home, without her consent, or even consultation with her, for a business venture that failed. Cf. Tuller v. Tuller, 469 So.2d 212 (Fla. 5th DCA 1985) (Court could have considered husband's losses in silver market in dividing marital property). Taking into account also the wife's contribution in general to the marriage and to her husband's career, and her interruption of her own career during the early part of the marriage, the court may have reasoned the home should be the wife's outright. However, we are troubled by the fact that the husband winds up with considerably less from the joint assets than the wife. Assuming even that the husband dissipated without the wife's consent all the proceeds from the sale of the previous home  which he hotly contests  and that therefore the wife is entitled to repayment for her loss, the wife still gets more than her fair share. Taking into account the considerable sums in temporary and rehabilitative alimony we find an even greater disparity.
We conclude it was not reasonable in the circumstances for the wife to get more of the joint assets than the husband, when there is no known legitimate basis for penalizing the husband  as when a spouse has misbehaved, and the assets are insufficient to support both adequately. See, e.g., Noah v. Noah, 491 So.2d 1124 (Fla. 1986).
The husband points out that the wife and children do not reside in the Hobe Sound home, which is no longer truly the marital home, but is really a vacation home. The usual rationale for award of the marital home to the wife  a modicum of stability in the lives of wife and children when the marriage breaks up  is lacking in this case. The court's oral statement about giving stability to the lives of the (as yet unborn) grandchildren does not qualify as a rationale.
The Florida Supreme Court has stated that the trial court may order such cross awards of joint property as will achieve equitable distribution, when either party has asked for disposition of jointly held assets. Tronconi v. Tronconi, 466 So.2d 203 (Fla. 1985). The supreme court has recognized as justification for awarding lumpsum alimony to achieve equitable distribution of assets, not merely the traditional justification of support needs, but also a special claim (not the same as a special equity) of a spouse because of his or her special contributions to a financially successful marriage. Tronconi, 466 So.2d at 204-05, Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). In Tronconi the supreme court recognized as still another justification the equitable disposition of interests in jointly held property. 466 So.2d at 205.
We do not think any of the justifications recognized in Canakaris and Tronconi is sufficiently present to support leaving the wife with more than half of the jointly held assets. A degree of inequity has resulted that cannot be perceived as lying within the trial court's discretion. It cannot be concluded that the wife contributed more to the marital economy than the husband. Cf. Grimmett v. Grimmett, 425 So.2d 545 (Fla. 4th DCA 1982); Tommaney v. Tommaney, 405 So.2d 454 (Fla. 2d DCA 1981). The wife may have been entitled to one-half of the marital assets, and arguably more because of the husband's dissipation of an uncertain amount of the proceeds from sale of the prior home; but we conclude she got disproportionately more than she was entitled to.

II
The husband next questions the wife's entitlement to $48,000 in rehabilitative alimony over two years. He points out that the wife already has a quite lucrative career. The wife concedes that her skills and career do not need rehabilitation, but urges that the cases narrowly defining rehabilitative alimony should not be blindly followed. Rather, she suggests that to do equity between the parties there was need for a transition period, since the wife has been accustomed to a standard of living based on the incomes of both husband and wife. She points out that in Sisson v. Sisson, 336 So.2d 1129 (Fla. 1976), the Florida Supreme Court reinstated a trial court's *1052 award of "lump sum rehabilitative alimony" even though the wife had no need to acquire or relearn job skills. The court said therein that whether alimony is characterized as rehabilitative or otherwise, the need of the claimant and the other spouse's ability to pay are the principal criteria. The trial court is in the best position to determine these.
Taken by itself, we do not think the alimony award was error; but we wish  because of our determination that the property distribution was erroneous  to leave the trial court free to reexamine the alimony provision as well.

III
The wife has relatively limited liquid assets and substantially lower income than the husband. Thus it was not unreasonable for the trial court to determine that the husband should pay $7,500 in attorney's fees incurred by the wife. However, again in the light of the inequitable property distribution, if we look at the whole picture it may be unfair to ask the husband to pay the attorney's fees of the wife. On remand, the trial court should be free to mold the equitable result with all the components.
In conclusion, we leave the trial court free to reconsider the other monetary awards when it acts to rectify the property distribution. In Duncan v. Duncan, 379 So.2d 949, 952-53 (Fla. 1980), it is stated that disposition of marital property and provision of child support and alimony are mutually dependent, and a judgment containing all these ingredients must be fair and equitable and must provide a plan of hopeful fiscal stability. We would think that a similar principle applies when attorney's fees are also awarded; and that while the supreme court in Duncan had in mind particularly the financial welfare of minor children, analogous reasoning is applicable in the present case, albeit the children here are all adults.
The wife has applied for attorney's fees in connection with this appeal. Although under present circumstances she appears better off than the husband, he has more liquid assets, and it is possible that when the joint property is redistributed the husband will be better able to pay these than the wife. Accordingly, we conditionally grant them, subject to the trial court's determination on remand.
DOWNEY and ANSTEAD, JJ., concur.