533 So.2d 791 (1988)
Joseph Thomas LONGO, Appellant,
v.
Andrea Ann LONGO, Appellee.
No. 4-86-1597.
District Court of Appeal of Florida, Fourth District.
September 21, 1988.
Rehearing and Rehearing Denied December 1, 1988.
*792 Brian Glick, Boca Raton, and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, for appellant.
Susan J. O'Hara, Palm Beach, Jane Kreusler-Walsh and John Beranek of Klein & Beranek, P.A., West Palm Beach, for appellee.
EN BANC
Rehearing and Rehearing En Banc Denied December 1, 1988.
HERSEY, Chief Judge.
The husband in this dissolution action appeals the final judgment. We reverse and remand for correction with regard to: (1) the husband's salary, (2) the value of the husband's pension plan, (3) the husband's obligation to maintain life insurance for the wife's benefit, and (4) the husband's obligation to pay all of the minor children's medical expenses. We also reverse the award of rehabilitative alimony to the wife. Finally, we remand for a redetermination of equitable distribution and for reconsideration of the issue of whether the wife is entitled to attorney's fees.
The final judgment awarded residential custody of the two minor children to the wife and the husband was ordered to pay child support of $500 per month per child. The husband was also ordered to provide health and dental insurance for the minor children and was required to pay all medical, dental and orthodontic expenses not covered by insurance. The wife was awarded the husband's interest in the marital home, three automobiles, permanent periodic alimony of $1,000 per month and rehabilitative alimony of $600 per month for twenty-four months. The husband was to retain his interest in his pension plan and his stock in IBM, and the parties were to divide all personal property located in the marital home. The husband was ordered to obtain a $100,000 life insurance policy (naming the wife as beneficiary) to guarantee the alimony and child support awards. The husband was also ordered to pay the wife's attorney's fees in the amount of $10,000.
There was undisputed evidence that the husband's monthly gross salary from his employment as an engineer at IBM was $4,707. The trial court erred, therefore, in finding that the husband earns $4,974 per month.
As previously noted, the wife was awarded rehabilitative alimony in the amount of $600 per month for twenty-four months. We conclude, however, that the record does not support an award of rehabilitative alimony. The principal purpose of rehabilitative alimony is to establish the capacity for self support of the receiving spouse, either through the redevelopment of previous skills or by providing the training necessary to develop potential supportive skills. Canakaris v. Canakaris, 382 So.2d 1197 *793 (Fla. 1980). Rehabilitative alimony "should be limited in amount and duration to that necessary to maintain the recipient through training or retraining." Atkins v. Atkins, 380 So.2d 522, 523 (Fla. 4th DCA), rev. denied, 389 So.2d 1107 (Fla. 1980).
Although the wife was a homemaker during most of the marriage and had only a high school education, she testified that she was currently employed as the manager of the tennis pro shop at St. Andrews Country Club in Boca Raton, that she had been so employed for three years and that she intended to continue that employment. Her gross yearly salary in that position is approximately $20,000, so she has some capacity for self support. The wife further testified that she had a 42% disability due to back trouble but the ailment apparently does not affect her ability to perform her job. There was no evidence that the wife intended to pursue any type of training or further education. Accordingly, the award of rehabilitative alimony was not justified. Here, unlike in Bridges v. Bridges, 506 So.2d 1047 (Fla. 4th DCA), rev. denied, 519 So.2d 986 (Fla. 1987), the circumstances do not warrant an award of rehabilitative alimony in order to do equity between the parties or to provide a "transition period" for the wife.
The wife was awarded the husband's interest in the home as lump sum alimony in order to achieve equitable distribution. The parties estimated that the value of the marital home was between $225,000 and $250,000, with an outstanding mortgage of $80,000. The husband now contends that this award thwarted the goal of equitable distribution, leaving him shortchanged. We agree.
First, the value of the husband's pension was incorrectly calculated, giving credit for future and uncertain employment. See Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986). Moreover, even assuming that the value of the pension was correct, the ultimate distribution of assets left the wife with almost twice as much as the husband.
"[M]arital assets should be distributed equally unless some showing is made of a disparity in the contributions of the parties to the marriage, or unless some other relevant factor justifies disparate treatment." Woodard v. Woodard, 477 So.2d 631, 633 (Fla. 4th DCA 1985), rev. denied, 492 So.2d 1336 (Fla. 1986).
The final judgment states that the lump sum alimony award of the marital home was justified by the wife's contributions to the marriage, the difference in the parties' earning capacities and the husband's separate assets. Although we agree that these factors may have justified some disparity, we conclude that they did not justify the degree of disparity which resulted here.
The wife concedes that the court awarded her $10,000 in attorney's fees although she presented no evidence as to the amount of fees she incurred. Since we have concluded that the case should be remanded for reconsideration of equitable distribution, we also conclude that the issue of whether attorney's fees for the wife are warranted should also be revisited.
The trial court ordered child support to continue until the children attained their majority, and permanent alimony to continue until the wife's remarriage, and ordered the husband to "pay for and provide evidence of said payment of life insurance guaranteeing the support provisions herein and naming the Wife as beneficiary in the amount of $100,000.00" (emphasis added). The husband now contends that this award was error, as it constituted post-mortem alimony and child support. We agree.
Alimony was initially conceived as a necessary corollary to the common-law obligation of a husband to provide his wife with the necessities of life. Thus, alimony terminated upon the death of the husband as did the husband's original duty of support. This is a "well established rule," characterized as being "clearly established law" and "settled" law. O'Malley v. Pan American Bank of Orlando, 384 So.2d 1258 (Fla. 1980).
This proposition and the statutes which implemented its underlying policy went virtually unchallenged until those statutes were recently amended. Laws 1984, chapter *794 84-110, section 1, added the following to section 61.08, Florida Statutes:
(3) To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose.
A similar amendment was made to section 61.13(1), pertaining to child support. Some courts have taken the position that the effect of the amendments is to permit post-mortem alimony and child support while others have taken a contrary position.
Based upon the interpretation that under the amended statutes one who is ordered to pay alimony and child support may be ordered to purchase or maintain life insurance only to the extent necessary to protect and secure the support award, the second district has held that these statutes do not abrogate the settled rules against post-mortem alimony and child support. See Sobelman v. Sobelman, 516 So.2d 7 (Fla. 2d DCA 1987) (Sobelman II); Dwyer v. Dwyer, 513 So.2d 1325 (Fla. 2d DCA 1987); Sobelman v. Sobelman, 490 So.2d 225 (Fla. 2d DCA 1986) (Sobelman I). By necessary implication both the third and fifth districts have adopted a similar interpretation. See Turner v. Turner, 507 So.2d 170 (Fla. 5th DCA 1987); Cantrell v. Home Life Insurance Co., 524 So.2d 1063 (Fla. 5th DCA 1988); Benson v. Benson, 503 So.2d 384 (Fla. 3d DCA 1987).
The first district has apparently adopted a different view. In Kooser v. Kooser, 506 So.2d 81, 82 (Fla. 1st DCA 1987), the district court affirmed the trial court's denial of a wife's request that the husband be ordered to purchase life insurance to protect his alimony obligation. The court stated that "it is obvious that the wife's request for life insurance was to perpetuate the payment of alimony subsequent to the husband's death." Id. at 82. Also, citing Sobelman I, the court stated that "it is questionable whether section 61.08(3) legitimizes what is otherwise a prohibition against ordering a spouse to maintain life insurance as a form of `postmortem alimony.'" Id. In a more recent case, however, the first district expressly disagreed with Sobelman II, stating that it does "not ascribe to the belief that the legislature only intended such an insurance policy to cover any arrearages existing at the time of the paying spouse's death." Fiveash v. Fiveash, 523 So.2d 764, 765 (Fla. 1st DCA 1988). See also McMath v. McMath, 526 So.2d 1027 (Fla. 1st DCA 1988).
As we read the amendment, it permits a court to require acquisition or continuation of a life insurance policy, a bond or some other security device to secure an alimony award. The discretion to impose a requirement for insurance is carefully limited: it may only be exercised "to the extent necessary to protect an award of alimony... ." The language seems very clear and therefore in our view leaves no room for the application of rules of statutory construction. It is perhaps simplistic to explain that we take the word "secure" used in this context not to be used as a synonym for "obtain" but rather to refer to a device (such as a mortgage) to safeguard payment of an obligation. The statute provides a method of securing or protecting an alimony award. It contains no language expressly creating a new duty or expanding an existing one.
It seems trite to suggest that had the legislature intended to overturn venerable precedent it would have "said so." However, the legislature is presumed to be cognizant of the rules of law that a particular enactment will affect. It is doubtful if post-mortem alimony and post-mortem child support were intended to be engrafted upon Florida law by inartful legislative draftsmanship and innuendo.
We make one final observation on the issue although others (such as public policy considerations and economics) come readily to mind. If we assume that the amendment authorized post-mortem alimony, does such an award terminate upon the surviving spouse's subsequent remarriage? death? inheritance of several million dollars? Does post-mortem alimony burden the obligor spouse's estate if that spouse *795 dies before the purchase of life insurance is completed? or where no insurance is contemplated? Simply stated, more problems are created than are solved by reading into these amendments something that the legislature never intended.
For these reasons we agree with Sobelman II and disagree and certify conflict with Fiveash.
Our opinion in Gepfrich v. Gepfrich, 510 So.2d 369 (Fla. 4th DCA 1987), is not inconsistent with this position. In Gepfrich the husband was ordered to maintain life insurance equal to the outstanding balance of lump sum and rehabilitative alimony awards. As we said there, the husband on appeal questioned only that aspect of the final judgment (pertaining to insurance) that required him "to maintain life insurance benefits payable to the wife in a sum equal to his outstanding support obligations, because these obligations terminate upon his death." Id. at 370. Since the husband did not place in issue the correctness of the insurance requirement to secure payment of child support or lump sum alimony, this could only pertain to the rehabilitative alimony award. Our reliance on Sobelman I in affirming this insurance provision makes clear our intent in Gepfrich to limit insurance protection to arrearages in rehabilitative alimony that have accrued at the time of the husband's demise. See also Clark v. Clark, 509 So.2d 364 (Fla. 4th DCA 1987).
Our interpretation of the statute, then, is that insurance or some other form of protection may be required to ensure payment of arrearages in child support, permanent periodic or rehabilitative alimony or the balance due of lump sum alimony payable in installments (recognizing that the latter is also a charge against the estate of a deceased former spouse).
In Sobelman II the court held that the spouse seeking to have the awards protected by an insurance policy as provided by section 61.08(3), must establish the necessity (or a need) for security, and further that the terms and conditions of the insurance policy "should be limited in such manner that the receiving spouse will receive only what may reasonably be necessary to protect arrearages in alimony so that the actual effect of the insurance requirement is not to provide post mortem alimony." 516 So.2d at 9.
In the present case there is no evidence that the wife established a need for security for the payment of either alimony or child support. Here also, as in Sobelman II, "[i]f the provision were allowed to stand, the wife would be in a position to receive the face amount of the policy without regard to whether any of the alimony payments [or child support payments] were in arrears at the time of the husband's death." 516 So.2d at 9. Accordingly, we direct the trial court to reconsider the question of whether an insurance policy is needed to protect and secure the child support and alimony awards; and if a policy is needed, to require the policy to be limited to provide only what may be reasonably necessary to protect arrearages.
The wife concedes that the provision for medical, dental and orthodontic expenses for the minor children should be limited to those bills for other than usual and minor expenses. See Bosem v. Bosem, 279 So.2d 863 (Fla. 1973); French v. French, 452 So.2d 647 (Fla. 4th DCA 1984).
We affirm the dissolution but reverse as to the specific issues which have been discussed.
REVERSED AND REMANDED.
DOWNEY, ANSTEAD, GLICKSTEIN, DELL, WALDEN and GUNTHER, JJ., concur.
LETTS, J., dissents without opinion.
STONE, J., dissents in part with opinion.
STONE, Judge, dissenting in part.
I dissent from that portion of the opinion concerning the order that the husband maintain life insurance for the benefit of the wife.
In my judgment the intent of the amendment to section 61.08 is to place the spouse who receives permanent alimony on the *796 same footing, with respect to security, as one who receives lump sum alimony. There is no reason to limit the benefit of the statute simply to cover the possible situation that there may be arrearages in alimony at the time of the husband's death. It is a contradiction to expect a trial court to make a finding that arrearages are likely when there is a requirement of a finding of an ability to pay. A policy of providing security to those dependent on a former spouse for support is consistent with the public policy of protecting the income or assets of families, as is reflected in the homestead laws or elsewhere in chapter 61, Florida Statutes.
In my opinion, Gepfrich v. Gepfrich, 510 So.2d 369 (Fla. 4th DCA 1987), Clark v. Clark, 509 So.2d 364 (Fla. 4th DCA 1987), and the result in Benson v. Benson, 503 So.2d 384 (Fla. 3d DCA 1987), are consistent with Fiveash v. Fiveash, 523 So.2d 764 (Fla. 1st DCA 1988), which I would adopt. We should certify a conflict with Sobelman II, 516 So.2d 7 (Fla. 2d DCA 1987), and recognize that the statute now gives a trial court the discretion to provide a former spouse with security against the tragic consequences of a premature termination of income, provided that there is a finding of necessity and ability to pay. In all other respects I concur with the majority opinion.