552 So.2d 334 (1989)
Doris L. Bedrossian BOBB, Appellant/Cross-Appellee,
v.
Arthur A. BOBB, Jr., Appellee/Cross-Appellant.
No. 88-1427.
District Court of Appeal of Florida, Fourth District.
November 22, 1989.
Russell J. Ferraro, Jr. of McManus, Stewart, Ferraro & Schwartz, P.A., Stuart, for appellant/cross-appellee.
Jane L. Cornett of Wackeen, Koebe, Cornett & Googe, P.A., for appellee/cross-appellant.
WARNER, Judge.
The wife appeals a final judgment of dissolution of marriage claiming that the trial court abused its discretion in its equitable distribution of property. We agree that reversal is required.
The question presented involves the effect of separation upon the distribution of assets of the marriage. The parties were married in 1955. The husband was trained as an ophthalmologist. The wife also worked in the field of ophthalmology until the birth of the couple's first child at which time the wife became principally a homemaker. In 1963 the family moved to Saudi Arabia where the husband worked for Aramco. The wife worked part-time as a substitute teacher and occasionally for the eye clinic in Saudi Arabia, but her schedule revolved around her children and their schooling.
Life in Saudi Arabia was difficult for the wife, as women had no rights. She was not allowed to drive outside the American *335 compound, and she could not leave the country without her husband's permission. She left for a period of time in 1980. When she returned, her husband decided to take his vacation but would not take her with him, so she could not leave the country. It was after this that the parties separated, and the wife moved to her family's home in Pennsylvania in 1981. Between that time and the time the divorce was filed by the wife in 1986, she attempted to serve the husband with a support order issued by a Pennsylvania court but could not obtain jurisdiction over him. As a consequence the husband furnished no support to the wife during the separation. The husband retired from Aramco a year or two after the separation and ultimately moved to Florida where the divorce petition was filed.
The husband testified that at the time of the separation his assets totalled $380,000. They had grown to about $1,000,000 by the time of the dissolution. From the record it appears that most, if not all, of the increase was a result of appreciation on investments. The husband also receives social security payments both from the Federal government and from the Saudi government. The wife had accounts totalling $285,000 in her name. She testified that of this amount $200,000 was as a result of an inheritance and savings from income she made prior to the marriage. The wife's sole source of income other than her investments is social security payments which are less than one fourth of the husband's similar payments.
In its final judgment the trial court awarded the wife $185,000 as lump sum alimony and $20,000 of escrowed monies in equitable distribution of marital assets and awarded the wife her attorney's fees and costs. The court articulated no reason for the amount of the lump sum alimony other than there was "an ability to transfer some assets here without destroying anyone's property." It did not award any alimony to the wife. The court acknowledged that the wife had accumulated money from her inheritance, but the judgment did not set out the amount of the non-marital assets.
Thus, if the wife's assets are considered to be non-marital assets, the wife received $290,000 of $1,085,000 of marital property, or about 27%. If the wife's assets are marital property, she received $494,000 (including attorneys fees award) of $1,285,000 or just over 38% of the marital assets. Because the trial court made the finding that some of the monies accumulated by the wife were not marital funds, and the only testimony on that point was that $200,000 was the amount of non-marital monies, we conclude from the record that the wife received closer to 20% of the marital assets rather than 38%. The husband of course also has social security payments resulting from his employment which are four times the amount of similar payments to his wife.
In adopting the concept of equitable distribution in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), the supreme court recognized that a trial court need not equalize the financial positions of the parties but should insure that neither spouse falls from prosperity to misfortune. Canakaris at 1204. To that end the trial court is vested with discretionary power which is subject only to the test of reasonableness.
... [B]ut that test requires a determination of whether there is logic and justification for the result. The trial court's discretionary power was never intended to be exercised in accordance with whim or caprice of the judge nor in an inconsistent manner. Judges dealing with cases essentially alike should reach the same result.
Canakaris at 1203.
In this district that admonition in Canakaris has evolved into a general rule that asset distribution should be equal unless there is justification for a disparity in treatment. It began with Grimmett v. Grimmett, 425 So.2d 545 (Fla. 4th DCA 1982), when this court reversed an award of 75% of the marital assets to the wife, holding that where the evidence showed that the parties had shared equally in the responsibilities and benefits of the marital relationship, marital assets should have been distributed *336 in substantially equal shares upon dissolution.
Next came Woodard v. Woodard, 477 So.2d 631 (Fla. 4th DCA 1985), which adopted the Grimmett holding that "marital assets should be distributed equally, unless some showing is made of a disparity in the contributions of the parties to the marriage, or unless some other relevant factor justifies disparate treatment." Woodard at 633. The court reversed an award to the wife of the husband's interest in the marital home where the parties had virtually identical financial positions with reference to assets and income therefrom, both were of approximately the same age and state of health, and had similar work histories.
In Bridges v. Bridges, 506 So.2d 1047 (Fla. 4th DCA 1987), this court reversed an award of the marital home to the wife which resulted in the wife receiving about 63% of the assets holding that "the wife still gets more than her fair share." The court did not find that any of the justifications set forth in Canakaris or Tronconi v. Tronconi, 466 So.2d 203 (Fla. 1985), were present to support an award to the wife of more than half of the marital assets, noting that "a degree of inequity has resulted that cannot be perceived as lying within the trial court's discretion," even though in Bridges the wife's income generating ability was only about half that of the husband.
In Temple v. Temple, 519 So.2d 1054 (Fla. 4th DCA 1988), this court reaffirmed Woodard, stating, "As a rule, marital property should be distributed equally." Then in Longo v. Longo, 533 So.2d 791 (Fla. 4th DCA 1988), in an en banc decision this court unanimously adopted the position stated in Woodard that marital assets should be distributed equally unless some showing is made of a disparity in the contributions of the parties to the marriage, or unless some other relevant factor justifies disparate treatment. Thus, the court reversed an award of about two thirds of the assets to the wife, although the wife's income earning ability was only about onefifth of the husband.
By following the Woodard rule as adopted by our en banc decision in Longo, some measure of predictability can occur when decisions regarding equitable distribution are made in the analytical framework of that very simple rule. If the trial court starts with a proposition of an equal division of marital assets and then sets forth a justification for disparate treatment which comports with reason and logic (the Canakaris standard), then the trial court has appropriately exercised its judicial discretion. The size of the departure from equal is also set forth by Canakaris: that is, any distribution should not allow one spouse to fall from prosperity to misfortune but should be grounded on basic fairness. So long as that standard is met, then it would appear that based upon Canakaris the result should be upheld as within the trial court's discretion.
Applying that analytical framework to the present case, the trial court expressed no justification for the disparate distribution of marital assets in this long term marriage, noting only that the transfer ordered would not substantially affect either parties' property; this is patently insufficient as a justification. The justification advocated by the appellee on this appeal is the lengthy separation between the parties, citing Temple v. Temple, 519 So.2d 1054 (Fla. 4th DCA 1988). In Temple this court held that one justification for disparate division of marital assets could be a lengthy separation. However, the marital assets claimed by the wife in Temple consisted of stock which the husband had purchased during the period of separation using funds which the husband had borrowed or earned after the separation. See also Sheffield v. Sheffield, 522 So.2d 986 (Fla. 1st DCA 1988). As noted in Temple, had the dissolution been obtained at the time of the separation the stock never would have been a marital asset. In contrast the marital assets claimed by the wife in this case were all in existence at the time of the separation. Their increase resulted only from passive investment. Thus, had the wife obtained a dissolution at the time of separation, she would have received her share of the assets available at that time *337 and thereafter would have been entitled to the appreciation on those assets. However, by the trial court's judgment the husband received all of the passive appreciation on those assets. Consequently, the separation was not a valid justification for disparate division of property where all of the assets were earned prior to separation, and appreciation of those assets resulted from passive investment.
We note that our result is consistent with section 61.075, Florida Statutes (1988), which was passed subsequent to the final judgment in this case. Section 61.075(4) provides that the date for determining marital assets is the earliest of the date of a valid separation agreement or such date as established in such an agreement, or the date of the filing of a dissolution proceeding. Since there was no valid separation agreement, the date for determining marital assets would have been in 1986 and not the year of separation, had section 61.075, Florida Statutes, applied.
Canakaris itself gives us pause in the result we reach because in that case the wife ended up with about 10% of the assets where substantially all of them had been accumulated prior to the parties lengthy separation. Thus, Canakaris is in some aspects factually similar to the instant case. However, we distinguish Canakaris, first, because the wife apparently never complained on appeal as to this disparity, and, second, it is not clear either from the district court opinion in that case or from the supreme court opinion to what extent the increased value of the marital assets was due to the active post separation efforts on behalf of the husband as opposed to passive appreciation. Finally, the husband in Canakaris supported the wife throughout the separation, unlike the husband in the instant case.
We thus conclude that the wife received a disproportionately small share of the marital assets without justification under the facts of this case. We therefore remand for further proceedings on this issue. As to the wife's second claim that she is entitled to permanent alimony, we do not necessarily agree with the wife's position, because the relevant consideration has always been the needs of the wife and the ability of the husband to pay. If through her distributions she is capable of supporting herself in accordance with the life style which the parties maintained during the marriage, then no alimony is required. However, because the issues are interrelated in the trial court, upon remand the trial court may reconsider the issue of alimony if it deems this necessary in fashioning the financial aspects of its judgment.
Reversed and remanded.
ANSTEAD and GLICKSTEIN, JJ., concur.