665 So.2d 322 (1995)
John LEWIS, Appellant,
v.
Ester LEWIS, Appellee.
No. 93-1035.
District Court of Appeal of Florida, Fourth District.
December 20, 1995.
*323 Joseph S. Geller of Geller, Geller, Burton & Garfinkel, P.A., Dania, for appellant.
Darryl S. Schreiber of Schreiber, Schreiber & Schreiber, Hollywood, for appellee.
KROLL, KATHLEEN J., Associate Judge.
In his appeal from a final judgment of dissolution of marriage, John Lewis claims the trial court erred in (1) identifying, valuing and distributing the assets and liabilities of the parties; (2) awarding to the wife his share of the equity in the marital home; (3) awarding the wife rehabilitative alimony; (4) failing to impute income to the wife in determining the child support amounts; (5) setting a visitation schedule with the minor children; and (6) awarding the wife attorney's fees and costs. We reverse the award of attorney's fees because the trial court made insufficient findings to afford proper appellate review of the attorney's fees issue. We otherwise affirm the final judgment of dissolution in all respects.
The parties were married on August 13, 1977, and the wife filed a petition for dissolution of marriage on February 25, 1992. They had two children during the marriage, ages five and eight as of the trial. At that time, the husband earned $40,000 annually and the wife was not employed. She had worked almost continuously throughout the marriage, with the exception of two years following the birth of her first child, but was laid off in 1989. The wife had been making approximately $18,000 per year as a trained bookkeeper. At the time of trial, she had been looking for employment.
The major marital assets of the parties were the marital home, a Charles Schwab account, the husband's pension and a thrift account. Concerning the background on the Charles Schwab account, the trial court found that in January 1991, the husband was awarded $67,058.25 on a work-related claim which was a marital asset. He deposited the money into a Charles Schwab account under his mother's name. The trial court found in its final judgment that $54,000 in marital assets, in the form of stocks, remained in the account as of February 25, 1992. The trial court had issued an order on that date enjoining the husband from disposing of any marital property or assets. The husband admitted he depleted the account after the order was issued, giving various and sundry explanations for the consumption of the funds. At the commencement of trial, less than $1000 remained in the Schwab account.
The trial court then awarded the husband's interest in the house to the wife, resulting in the wife receiving full right and title to the marital home. In its order on the husband's motion for clarification, the trial court emphasized that the wife had been given the husband's interest in the marital home in satisfaction of her claim to the Schwab account, the pension and the thrift account.
The record supports the trial court's valuation and distribution of assets and liabilities. The husband wrongfully, intentionally and in defiance of the trial court's order dissipated the Schwab account. Under these circumstances, the trial court had the discretion to affect an unequal distribution pursuant to section 61.052, Florida Statutes (1993). Such discretion would allow the trial court to assign the parties' liabilities solely to the husband. Notwithstanding this discretion to distribute the assets unequally, the record supports the conclusion that the trial court achieved close to an equal distribution of the marital assets and liabilities.
Additionally, the trial court ordered the husband to pay two years of rehabilitative alimony at $350 monthly. The trial court did not err when it awarded the wife this rehabilitative alimony. In Murray v. Murray, 374 So.2d 622, 623 (Fla. 4th DCA 1979), this court stated:

*324 Rehabilitative alimony is designed to aid a person to regain the ability for self-support similar to that which previously existed or would have existed except for the marriage of the parties.
In this case, the wife had a high school education and some vocational training in bookkeeping. She had earned between $18,000 and $20,000 per year while working, compared to the husband's annual income of $40,000. Although not employed at trial, the wife was making attempts to find a job which would pay sufficient income to provide for herself and her minor children. The record supports a finding of disparate financial conditions between the husband and the wife. See Sisson v. Sisson, 336 So.2d 1129 (Fla. 1976). We believe that as a court we should not blindly follow cases attaching a restrictive definition to rehabilitative alimony without giving deference to the realities of life nor without doing that which is equitable to the parties. See Bridges v. Bridges, 506 So.2d 1047 (Fla. 4th DCA), rev. denied, 519 So.2d 986 (Fla. 1987); cf. Longo v. Longo, 533 So.2d 791 (Fla. 4th DCA 1988) (holding rehabilitative alimony not warranted under these particular facts "to do equity between the parties or to provide a `transition period' for the wife" unlike the situation in Bridges where rehabilitative alimony was properly awarded for those reasons). The wife had not worked since 1989, and rehabilitative alimony should afford her the ability to regain employment. The trial court properly ensured such a result in making the rehabilitative alimony award.
The wife's employment situation is pertinent to the issue of child support as well. As the wife had been actively endeavoring to secure a job, she was not voluntarily unemployed. Income should be imputed to a spouse only if that spouse's unemployment is voluntary. § 61.30, Fla. Stat. (1993). Therefore, the trial court did not err in refusing to impute income to the wife when calculating the parties' respective child-support responsibilities.
As to visitation, the parties had orally agreed to "liberal visitation," but ultimately failed to reach a settlement agreement. The final judgment granted visitation to the husband for every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m., from July 1 to August 15 every year and on Father's Day. Telephone contact was permitted Monday, Wednesday and Friday at 8:00 p.m. The trial court also provided for the parties to agree to other visitation though requiring any such agreement to be reduced to writing and signed by both parties.
The husband urges us to overturn the court-ordered visitation. He argues the schedule is unreasonable, contrary to the parties' agreement and unduly places the wife in control of his visitation. In Lane v. Lane, 599 So.2d 218 (Fla. 4th DCA 1992), this court explained that in matters of child visitation, the trial court is not bound by any stipulation or agreement. See also Forte v. Forte, 320 So.2d 446 (Fla. 3d DCA 1975), cert. denied, 351 So.2d 406 (Fla. 1977); Elebash v. Elebash, 450 So.2d 1268 (Fla. 5th DCA 1984). Moreover, the creation of a visitation schedule is within the discretion of the trial court. Neustein v. Neustein, 503 So.2d 439 (Fla. 4th DCA 1987). Based upon the record, we hold that the trial court established a reasonable visitation schedule. The mere fact that the trial court, in addition to the reasonable court-ordered visitation, made allowances for the parties to agree to additional visitation times does not place visitation under the wife's control. Cf. Letourneau v. Letourneau, 564 So.2d 270 (Fla. 4th DCA 1990) (reversing the trial court's order granting wife approval of all visitation rights).
Finally, the husband asserts the trial court erred in entering the award of attorney's fees. There must be a determination of the number of hours reasonably expended and the reasonable hourly rate to support any attorney's fees award. Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985); Sunday v. Sunday, 610 So.2d 62 (Fla. 3d DCA 1992). Here, the trial court entered the attorney's fee award without any attendant findings. Thus, we must reverse this award and remand for the trial court to make the requisite findings.
At appellate argument, counsel admitted fifty-four percent of the marital assets had *325 been consumed by attorney's fees. The parties lay blame on each other for the excessive fees. Nonetheless, when over one half of the marital assets ultimately end up in lawyers' pockets, one must ask the parties and their lawyers: What about the children?
This cause is remanded for further proceedings regarding the award of attorney's fees.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
GLICKSTEIN and PARIENTE, JJ., concur.