712 So.2d 835 (1998)
Gerald SPIELBERGER, Appellant,
v.
Annette Magalnick SPIELBERGER, Appellee.
No. 97-0289.
District Court of Appeal of Florida, Fourth District.
July 8, 1998.
*836 Elaine Johnson James of Nason, Yeager, Gerson, White & Lioce, P.A., West Palm Beach, for appellant.
Robert Feldman of Law Offices of Robert Feldman, P.A., Boca Raton, for appellee.
STONE, Chief Judge.
We reverse a final judgment of dissolution as the trial court distributed 98% of the marital assets to Wife without justification.
The parties were married for three years. Husband is 73 and in poor health; Wife is age 64. Wife entered the marriage with few assets and Husband had saved over $100,000 as well as accumulating a pension. The parties purchased an $81,000 home, with a $40,000 down payment, apparently from Husband's pre-marital funds. After the marriage, Wife received $31,000 from a personal injury settlement. She gave about half of this money to her children, and deposited the remaining $16,300 in the parties' joint checking account. Most of this money was used to purchase furniture. Shortly after the marriage, Husband suffered a nervous breakdown. He was hospitalized for four-and-a-half months. His illness continued and they separated.
The court had ordered Husband to pay temporary support of $1,600 a month. Wife received $29,692 in temporary support, and Husband is in arrears for an additional $21,503. The final judgment granted the marital home, which had $58,000 in equity, to Wife, entered judgment for her for $10,684 for funds improperly removed from a joint bank account, ordered Husband to pay $1,600 rehabilitative alimony for 24 months, and awarded all furnishings and other marital assets to Wife.
Distribution of marital assets must be equal unless there is justification in the record supporting the court's disparate treatment. E.g., Longo v. Longo, 533 So.2d 791 (Fla. 4th DCA 1988); § 61.075(1), Fla. Stat. (1997). We find no record justification for the inequitable award in the instant case. Wife is in good health, and is still able to work, whereas Husband is 73 and quite ill. Most of the assets, including $40,000 of the $54,191 worth of equity in the house, came from Husband. The disparity in the parties' financial situation is accounted for by the court's $1,600 a month award of rehabilitative alimony, and temporary alimony for which Husband must still pay $22,319 in arrearages. We recognize that the trial court might have intended the disparate award as a setoff for the balance of the husband's temporary alimony debt to the wife, but the judgment does not provide for satisfaction of this obligation.
In Longo, we concluded that the wife's lesser capacity for self-support did not justify distribution of assets in which the wife received almost twice as much as the husband *837 even though the wife's contributions to the marriage may have justified some disparity in the distribution of assets. In Carr v. Carr, 569 So.2d 903 (Fla. 4th DCA 1990), we reversed an award of 84% of marital assets to the wife absent sufficient justification for inequitable distribution, and in Ziemba v. Ziemba, 519 So.2d 752 (Fla. 4th DCA 1988), we concluded that distribution of marital assets with 80% going to the wife and 20% to the husband unfairly penalized the husband.
We also note that the judge's valuation of the parties' furniture appears inconsistent. The court valued all of the furnishings at only $3,000, although they were recently purchased for at least $20,000. (Wife estimated she spent $20,000 on the furniture, Husband estimated the cost at $62,000.) However, the court valued Husband's sofa at its full retail price$1,100. On remand, the court should find a consistent method of depreciating each party's furniture, and then equitably distribute its value.
We also find that the court abused its discretion in determining that the ChemPlus account was a marital asset. Under the equitable distribution statute, non-marital assets include "[a]ssets acquired ... by either party prior to the marriage, and assets acquired... in exchange for such assets...." Section 61.075(5)(b)1, Florida Statutes (1997); Heinrich v. Heinrich, 609 So.2d 94, 95 (Fla. 3d DCA 1992). The parties do not dispute that prior to the marriage the ChemPlus account contained only Husband's money. After the marriage, the account was titled jointly in both parties' names.
The general rule is that "When one spouse deposits funds into a joint account where they are commingled with other funds so as to become untraceable, a presumption is created that the spouse made a gift to the other spouse of an undivided one-half interest in the funds." Williams v. Williams, 686 So.2d 805, 808 (Fla. 4th DCA 1997). In the instant case, there was no evidence that Wife deposited any funds into this account or ever drew upon these funds. There was testimony that the parties had pooled and commingled funds with regards to another joint account, but the record reflects that the funds in the ChemPlus account were exclusively Husband's. Thus, no commingling occurred to create a presumption of a gift. See generally Lyons v. Lyons, 687 So.2d 837 (Fla. 2d DCA 1996) (although certificate of deposit was originally placed in parties' joint names, because it was funded entirely by wife's inheritance and the funds were never commingled, the CD was wife's non-marital asset); Behrman v. Behrman, 376 So.2d 294 (Fla. 2d DCA 1979).
As to all other issues raised, we affirm. We remand for further proceedings consistent with this opinion.
GUNTHER and SHAHOOD, JJ., concur.