967 So.2d 349 (2007)
Debra J. SIEGEL, Appellant,
v.
Franklin J. SIEGEL, Appellee.
No. 3D06-961.
District Court of Appeal of Florida, Third District.
October 10, 2007.
*350 Franklin & Criscuolo and Barry S. Franklin and Donald G. Criscuolo, North Miami Beach, for appellant.
Bette Ellen Quiat; Jay M. Levy, Miami, for appellee.
Before WELLS and CORTIÑAS, JJ., and FLETCHER, Senior Judge.
WELLS, Judge.
Debra J. Siegel appeals from a final judgment of dissolution of marriage claiming that the trial court erred in determining that an account titled solely in the name of her former husband, Franklin J. Siegel, was non-marital property. Because we agree that the account is a non-marital asset, we affirm.
The parties were married on July 26, 1981, and are the parents of three children, all of whom attained majority before the marriage was dissolved. Mr. Siegel is a sole practitioner attorney who earned a modest living during the marriage; Mrs. Siegel worked periodically during the marriage and currently holds a masters degree in social work which she earned shortly before the marriage ended.
Without doubt, the parties lived comfortably, although modestly, during their marriage. After twenty-two years of marriage, the parties had acquired only three assets of significance: Mr. Siegel's retirement account, valued at $39,000; a life insurance policy with a $24,500 cash value; and the marital home, with an equity value between $675,000 and $775,000. The only other asset owned by either party was a Vanguard brokerage account, valued at $223,000, titled in Mr. Siegel's name alone.
The testimony regarding this account is not in dispute. Commencing in 1989, and continuing until 2003, Mr. Siegel's mother, Roslyn, gave him a check in the amount of $10,000 each year as a birthday gift. These checks were payable solely to Mr. Siegel and stated "Happy Birthday" on their faces. Mr. Siegel deposited each of these checks into an account titled in his name alone  the Franklin J. Siegel R.S. Gift Account. The funds deposited into this account were never used by Mr. Siegel for any purpose, were not co-mingled with any marital funds, and were never traded or manipulated by Mr. Siegel *351 in any manner. All increases in value of this account came solely from market increases or interest and dividend payments. Mrs. Siegel claims that this account was a marital asset, and that the trial court erred in declaring this account non-marital, because Mr. Siegel had told his accountant that the purpose of the account was to save for "their" future or retirement, for emergencies, and for expenses such as their daughters' weddings. We find no error in the trial court's conclusion regarding this asset.
Section 61.075 governing distribution of property in dissolution actions expressly requires trial courts to determine whether assets are marital or non-marital and to segregate to each party his or her non-marital assets and then distribute the marital assets:
(1) In a proceeding for dissolution of marriage . . . the court shall set apart to each spouse that spouse's nonmarital assets and liabilities, and in distributing the parties' marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal. . . .
§ 61.075(1), Fla. Stat. (2006); see also Riley v. Edwards-Riley, 963 So.2d 829 (Fla. 3d DCA 2007) ("the trial court must set apart to each spouse that spouse's nonmarital assets and liabilities and then distribute the marital assets and liabilities"); Green v. Green, 650 So.2d 181, 182 (Fla. 1st DCA 1995) (remanding for the trial court to set aside the nonmarital assets and liabilities and then to equitably distribute the marital assets and liabilities); Green v. Green, 542 So.2d 466, 467 (Fla. 5th DCA 1989) (confirming that non-marital assets should not be placed in the "marital asset pot" for distribution).
To facilitate the equitable distribution of assets, section 61.075 defines marital and non-marital assets and places within the definition of non-marital assets those assets "acquired separately by either party by noninterspousal gift." § 61.075(5)(b)(2), Fla. Stat. (2006). Thus, without a doubt, the funds given to Mr. Siegel annually by his mother were non-marital assets.
We agree with the trial court that Mr. Siegel's intent regarding the funds deposited into the Franklin J. Siegel R.S. Gift Account is evidenced by his actions in keeping this account titled in his name alone, in not commingling the funds in this account with marital funds, and in expending no marital efforts on this asset, and not by a never acted upon statement that he intended to use this account for "their"-meaning his and Mrs. Siegel's-retirement, for their daughters' weddings, or to defray business expenses. "Obvious evidence of an intent that [a noninterspousal gift] remain non-marital arises where the non-marital property is placed into a separate account, no other funds are deposited into it, and the account is never intermingled with the parties' other funds." Lakin v. Lakin, 901 So.2d 186, 190 (Fla. 4th DCA 2005); see also Spielberger v. Spielberger, 712 So.2d 835, 837 (Fla. 4th DCA 1998) (concluding that no presumption of gift arose as to non-marital funds placed in a joint account following marriage because the funds were traceable to a pre-marital source belonging solely to the husband; there had been no commingling with the marital funds; and the wife had never accessed the account). Mr. Siegel's statements also do not evidence an actual enforceable gift to Mrs. Siegel.
We have previously outlined the principles used for determining whether there has been a valid gift:
It is well settled that to effectively pass title by gift there must be a surrender of dominion over the res, coupled with the intent then and there to pass title. In other words, there must be an *352 immediate vesting of some interest in the donee, complete and irrevocable. If the donor withholds divestiture it is not a legal gift. A delivery which does not confer the present right to reduce the res into possession of the donee is insufficient.

Kuebler v. Kuebler, 131 So.2d 211, 215 (Fla. 2d DCA 1961); see also Ritter v. Shamas, 452 So.2d 1057 (Fla. 3d DCA 1984); Winner v. Winner, 370 So.2d 845 (Fla. 3d DCA 1979). Accordingly, "a mere intention to give in the future, however well shown, gives rise to no obligation which the law will recognize or enforce." In re Slawson's Estate, 41 So.2d 324, 327 (Fla.1949) (internal quotation marks omitted).
Rasmussen v. Rasmussen, 909 So.2d 969, 970 (Fla. 2d DCA 2005) (emphasis added); see also Farrior v. Farrior, 736 So.2d 1177, 1178-79 (Fla.1999) (stock kept in a safe deposit box which was neither traded nor intermingled with marital assets and which remained in the name of the original owner spouse, remained a non-marital asset even though it was used as collateral for joint debts); Lakin, 901 So.2d at 191 (confirming that use of a portion of non-marital funds does not convert the remaining funds into a marital asset).
In this case, Mr. Siegel never used the Franklin J. Siegel R.S. Gift Account for any purpose and was careful to keep this asset separate from the couple's marital assets. Although he may have intended to make a gift of some or all of the money in this account at some time in the future, he never actually made a gift of any part of it. Since we find no merit in any of the other issues raised by Mrs. Siegel with regard to this account, we affirm the trial court's finding that the account at issue was a non-marital asset.
The final judgment under review is, therefore, affirmed.