DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THOMAS H. REED,**
Appellant,

v.

**CHERYL A. REED,**
Appellee.

No. 4D2023-2584

[February 19, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen M. Miller, Judge; L.T. Case No. 50-2022-DR-005988-XXXXNB.

Troy William Klein, West Palm Beach, for appellant.

Kathryn M. Beamer of Kathryn M. Beamer, P.A., Palm Beach Gardens, and Deanna V. Shuler of Deanna V. Shuler, P.A., Palm Beach Gardens, for appellee.

WARNER, J.

Appellant husband appeals a final judgment of dissolution in which the trial court made an equitable distribution to the wife of 80% of a real estate property owned by the parties. Because the parties had been separated for twenty-five years, and the wife solely maintained the property on which she ran a business during that time, we conclude that the court did not abuse its discretion. However, before applying the 80/20 split, the court deducted mortgages which had been the wife's sole obligation, and recaptured business deductions, as well as future sale closing costs based on the agreed property value, thus making the husband responsible for 50% of those liabilities. We reverse because no evidence supports the 50/50 split of the liabilities nor supports the deduction of closing costs, when no sale of the property was contemplated. Lastly, the husband contends that the court abused its discretion in failing to require the wife to pay his attorney's fees. We conclude this was not an abuse of discretion.

## Facts

The parties were married in 1986 and petitioned for dissolution of their marriage in 2022. When they moved to Florida in 1992, they purchased a twenty-acre property known as the C Road Property for $220,000, using marital funds and taking out a mortgage. They planned to use the C Road Property as their marital residence and to use the land to raise exotic parrots. Later, they decided to run a bed and breakfast ("B&B") on the property. They paid for the construction of the B&B by taking out a second mortgage and by using some proceeds from liquidating several marital assets, including the sale of the husband's detective agency, which he sold for a lump sum and monthly payments.

The B&B was completed in 1997. The Husband relocated to Chicago in May of 1998, but the wife decided to stay and run the B&B, in addition to being a fulltime occupational therapist. Although they contemplated selling the property, they did not receive any good offers. Initially, and until 2000, the husband sent the wife monies to help pay for the mortgages and expenses of the property. However, after that time, he agreed not to seek a sale if she would remove his financial responsibility for the property. To do so, she took out a larger mortgage to satisfy both existing mortgages, the note being solely her obligation.

At some point, the husband sold his parrots for $130,000. He did not share any of the proceeds with the wife. Nor did she receive any further proceeds from the sale of the detective agency, which amounted to $200,000 after the parties' separation.

In 2007, the wife took out a home equity line of credit in her own name to assist with the B&B. The husband signed the mortgage because of his continued ownership of the property, but he was not obligated on the note. From that loan, the wife sent the husband $100,000.

Since 2007, the husband has not seen the wife. He did not contribute money or labor to run the B&B after 2000. Since May 2000, the wife has paid for all the C Road Property's expenses—including the upkeep, property taxes and mortgage payments—and has run the B&B by herself.

The parties continued to file joint tax returns until 2021, and due to deductions from gross income and expenses of the B&B, they paid no federal income taxes from 1998 through 2021.

The parties stipulated that the C Road Property is currently worth $3,325,000. An appraiser testified that the value was all in the land, and

the B&B buildings brought no additional value to the property. Nevertheless, the B&B business was substantial. In addition to the B&B, the wife had a separate business on the property renting it out as a venue for weddings and other events. The wife requested that she keep the C Road Property to keep running these businesses. The husband requested an equal distribution of the C Road Property, but he also desired for the wife to keep the property and only wanted to be paid half of the equity. The wife requested an unequal distribution, arguing she was entitled to credits for being the sole contributor on the property since 2000.

The wife called a forensic accountant, who prepared an equitable distribution schedule. As to the C Road Property, the accountant evaluated the contributions made to the property for two time periods: from purchase through May 2000 (when the husband stopped contributing), and from May 2000 onward. She estimated that $826,215 was contributed from joint earnings from purchase through May 2000, and that $1,479,101 was contributed solely by the wife from that point forward. Based upon those figures, she allocated 80% of the value of the property to the wife and 20% to the husband.

From the gross agreed value of $3,325,000, the accountant deducted the amount outstanding on the two mortgages on the property. She also deducted the amount of depreciation recapture which ordinarily would be required on any sale of the property, as the wife had taken a depreciation deduction on her tax returns. And finally, she deducted closing costs of 8% of the value. This resulted in a net value of $1,632,359, after which she applied the 80/20 split of the net value. After allocating other assets to the husband and the C Road Property to the wife, the wife owed the husband $206,472 as an equalizing payment.

In its final judgment, the trial court found that the wife had solely maintained the property for twenty-five years. Had the wife not done so, the parties would have sold the property years earlier. The trial court also concluded that the wife needed the property to maintain her businesses, and the husband agreed that she should keep the businesses. As to other factors, the court noted that the husband had not shared with the wife the proceeds from selling other marital assets, including the parrots and detective agency, which he kept for himself. Therefore, the wife's contributions justified an unequal distribution of the value of the property.

The court adopted the accountant's equitable distribution plan in its final judgment. The plan provided for a sale of the property if the wife failed to make the payment of $206,472 to the husband within ninety days. The wife was thus left with $1,425,887 in equitable distribution,

and the husband's share was $356,472.  The trial court also denied the husband's claim for attorney's fees.  From this judgment, the husband appeals.

## Analysis

Appellate courts review a trial court's equitable distribution of marital assets for abuse of discretion.  *Sager v. Sager*, 291 So. 3d 965, 968 (Fla. 4th DCA 2020).  "The final distribution of marital assets, whether equal or unequal, must be supported by factual findings based on substantial competent evidence."  *Id.* (quoting *Franklin v. Franklin*, 988 So. 2d 125, 126 (Fla. 2d DCA 2008)).

In equitably distributing property upon dissolution of marriage, section 61.075(1), Florida Statutes (2022), requires that "the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors . . . ."  The factors most relevant to the issues in this case include:

> (b) The economic circumstances of the parties.
>
> (c) The duration of the marriage.
>
> . . .
>
> (f) The desirability of retaining any asset, including an interest in a business, corporation, or professional practice, intact and free from any claim or interference by the other party.
>
> (g) The contribution of each spouse to the acquisition, enhancement, and production of income or the improvement of, or the incurring of liabilities to, both the marital assets and the nonmarital assets of the parties.
>
> . . .
>
> (j) Any other factors necessary to do equity and justice between the parties.

*Id.*

The husband argues that the trial court abused its discretion in unequally distributing the C Road Property because the parties' lengthy

4

separation did not justify the unequal distribution of what the husband contends is the passive appreciation of the property. He relies principally on *Bobb v. Bobb,* 552 So. 2d 334 (Fla. 4th DCA 1989). In *Bobb,* the husband's assets were worth $380,000 at the time of separation and were worth about $1,000,000 at the time of dissolution. *Id.* at 335. The increase was mostly, if not entirely, due to passive appreciation, but the trial court only awarded the wife about 20% of these assets. *Id.* On appeal, we reversed the award, writing that "the separation was not a valid justification for disparate division of property where all of the assets were earned prior to separation, and appreciation of those assets resulted from passive investment." *Id.* at 337.

*Bobb* did not involve property actively managed and maintained by one of the parties. Here, while the C Road Property's increase in value was largely due to market forces, the parties would not have kept the property but for the wife's efforts. Since May 2000, the wife not only maintained the C Road Property but also paid all expenses arising out of it, including the mortgage, homeowner's insurance, and property taxes. In *Bobb,* the spouse holding the passive investments made no contributions; whereas, in this case, the wife made all the contributions to maintain the property and to enhance its income potential through her businesses, from which the husband also benefitted through the direct payments which he had received of at least $130,000, the business deductions which had eliminated his tax obligation, and the maintenance of his health insurance through the business.

Based upon the wife's sole maintenance of the property during the lengthy separation, her need to retain the property to run her businesses, and the husband's failure to share substantial other marital assets with the wife, the trial court's decision to unequally distribute the C Road Property is supported by the record and does not constitute an abuse of discretion.

As to the amount of the disparity, the trial court accepted the accountant's methodology of using the amount of each parties' contributions to the expenses of the property, including mortgage, taxes and insurance, to calculate a percentage of the value to be assigned to each as equitable distribution. Using that formula, the husband received 20% of the value. As stated in *Bobb*:

> The size of the departure from equal is also set forth by *Canakaris* [*v. Canakaris,* 382 So. 2d 1197 (Fla. 1980)]: that is, any distribution should not allow one spouse to fall from prosperity to misfortune but should be grounded on basic

fairness.  So long as that standard is met, then it would appear that based upon *Canakaris* the result should be upheld as within the trial court's discretion.

*Id.* at 336.  The distribution percentages meet this test.

We disagree, however, with the way in which the trial court treated the liabilities associated with the property.  Rather than apply the same 80/20 allocation of the liabilities as it had with the asset value, the court essentially provided for a 50/50 split of the liabilities.  The husband argues that this is error, and we agree.  No evidence supports an equal split of the liabilities.  The notes were taken out by the wife individually.  The first note consolidated the original loans to purchase and build the B&B and was specifically done to relieve the husband of any financial liability on the property.  The second was a home equity line of credit, again taken out by the wife alone.  The wife gave the husband some of the proceeds from the loan, but the wife received the substantial majority of the funds.  The income tax which the accountant stated would be due upon a sale, even though no sale was contemplated, was recapture depreciation from her businesses.  The wife also kept all of the income from her two businesses for herself since the husband stopped contributing to the businesses.  The accountant calculated that the wife received $1,200,000 in income from the properties over and above the expenses she paid on the property.  No testimony from the accountant established why the husband should be responsible for a greater share of the liabilities than his equitable share of the asset.  And given the wife's agreement to remove any financial liability of the husband in exchange for the husband not demanding the sale of the property, one might conclude that the wife should be liable for all the liabilities associated with the property, although the husband did not argue at trial or on appeal that the wife should be solely responsible for all liabilities.

We analogize this to *Wasserman v. Wasserman*, 651 So. 2d 823 (Fla. 4th DCA 1995), where we held that it was error for the trial court to assign all liabilities to the husband without a justification setting forth its reasoning.  *Id.* at 824.  While the husband does not object to the final judgment based upon the lack of findings of fact on this issue, we have examined the evidence and find no evidence to support a division of liabilities other than in accordance with the division of the asset to which the liabilities are attached.  An equitable division must be supported by competent evidence.  *See Sager*, 291 So. 3d at 968.

Having found that the wife's contributions and active management of the property justified an 80/20 split of the property value, and without

any evidence to support a 50/50 division of the liabilities associated with the property, the trial court erred in calculating each party's equitable share of the C Road Property.  On remand, the court should first apply the 80/20 split to the gross value of the property and then assign each liability to the parties based upon that 80/20 split.

The husband also contends that the taxes which may be due on sale should not be deducted at all, because no sale is contemplated.  However, "[a] trial court is required to consider the consequences of income tax laws on the distribution of marital assets and alimony ordered by it, and failure to do so is ordinarily reversible error."  *Nicewonder v. Nicewonder*, 602 So. 2d 1354, 1357 (Fla. 1st DCA 1992).  Here, the accountant testified that depreciation taken by the business would have to be recaptured on any sale.  No one testified to the contrary.[1]  "A trial court is not forbidden from accounting for future tax consequences simply because there is no evidence a sale of that asset is imminent."  *Bathke v. Costley*, 332 So. 3d 1076, 1078 (Fla. 5th DCA 2021).  Nevertheless, the liability should be split according to the 80/20 equitable allocation.

As to the accountant's reduction of the property value due to closing costs, which was also accepted by the trial court, we conclude that the court should not have reduced the value based upon such costs where no sale of the property was contemplated.  While it is appropriate to deduct sale costs where a prospective sale is imminent, where no sale is imminent, such costs should not be deducted.  *See Taber v. Taber*, 626 So. 2d 1089, 1090 (Fla. 1st DCA 1993).  In this case, the wife sought to retain the property, and no sale was even contemplated.  Therefore, closing costs should not have been deducted.[2]

However, the trial court ordered the sale of the property should the wife fail to pay the lump sum payment to the husband.  If that occurs, then the trial court may order that the closing costs may be deducted from the sale price before the equitable division of the proceeds in accordance with the final judgment.

---

[1] *Goodwin v. Goodwin*, 640 So. 2d 173, 175 (Fla. 1st DCA 1994), notes that depreciation recapture may be deferred upon sale where the property is the taxpayer's residence, and the tax may be avoided in other ways.  Yet, no testimony in this case supported the deferral or avoidance of the recapture.

[2] No evidence appears in the record to explain why the accountant used the 8% figure to calculate closing costs.  However, the husband does not raise this as an issue.

Finally, the husband contends that the wife should pay his attorney's fees of $15,000, because she received the lion's share of the assets and has greater income than the husband. A trial court's decision whether to award attorney's fees and costs to a party is reviewed for abuse of discretion. *Campbell v. Campbell*, 46 So. 3d 1221, 1222 (Fla. 4th DCA 2010).

Unlike the traditional prevailing party standard, "[t]he standard for awarding attorney's fees in dissolution cases is the financial need of the requesting party and the financial ability of the other party to pay." *Id.* at 1222; *see also* § 61.16(1), Fla. Stat. (2023). "The central inquiry under section 61.16 is whether one spouse has a need for fees and the other spouse has the ability to pay them." *Von Baillou v. Von Baillou*, 959 So. 2d 821, 823 (Fla. 4th DCA 2007). "Embedded in the concept of financial need is the notion that an award of fees is proper 'to prevent the inequitable diminution' of a spouse's share of an equitable distribution." *Id.* at 823 (quoting *Bagley v. Bagley*, 720 So. 2d 582, 583–84 (Fla. 4th DCA 1998)).

> What amounts to an 'inequitable diminution' of a share of equitable distribution is a fact-sensitive determination. In cases where the 'poorer' spouse left the marriage with a substantial equitable distribution, courts have either reversed a total or partial award of attorney's fees or affirmed a denial of attorney's fees.

*Id.* at 824.

Here, the husband will have over half a million dollars upon leaving the marriage, after applying the directions in this opinion. His $15,000 attorney's fees would amount to somewhere around 3% of his assets. Under these circumstances, the court did not abuse its discretion in denying his request that the wife pay his attorney's fees.

## Conclusion

The trial court provided for an unequal distribution of the C Road Property due to the wife's considerably greater contribution to the property's maintenance over twenty-five years. The court had substantial justifiable reasons to make this award. But no evidence supported an equal distribution of the liabilities attached to the property where the property's value had been distributed unequally. Therefore, the court erred in equally distributing liabilities on the C Road Property. Further, the court appropriately considered the tax liability upon any sale but erred in including closing costs when no sale was imminent. We therefore

reverse and remand for the trial court to recalculate the equitable distribution in accordance with this opinion.

*Reversed and remanded.*

GROSS and LEVINE, JJ., concur.

*    *    *

***Not final until disposition of timely filed motion for rehearing.***